PENN CENTRAL COMPANY *v.* BUFFALO SPRING & EQUIPMENT CO., INC.

[No. 229, September Term, 1970.]

*Decided February 3, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, SINGLEY, SMITH and DIGGES, JJ.

*James W. Constable,* with whom were *George W. Constable* and *Constable, Alexander & Daneker* on the brief, for appellant.

*Irving B. Grandberg* for appellee.

BARNES, J., delivered the opinion of the Court.

The appellant, Penn Central Company (Penn Central), seeks a reversal of an order of the Superior Court of Baltimore City (Howard, J.), dated May 7, 1970, denying Penn Central's motion of October 14, 1969, to strike out a judgment obtained by the appellee, Buffalo Spring & Equipment Co., Inc. (Buffalo Spring), on July 8, 1969, in the amount of $6,687.00 with interest from that date and costs against Penn Central as garnishee of James G. Mench. The principal question is whether the judgment was obtained by "fraud, mistake, or irregularity" as provided in Maryland Rule 625 a, the motion to strike having been filed after the judgment had become enrolled 30 days after its entry.

In 1966, Buffalo Spring obtained a judgment for $8,-200.82 in the Superior Court of Baltimore City against James G. Mench, on which the balance due was $6,687.00 when Buffalo Spring issued an attachment on that judgment on March 11, 1969, by its attorney, Irving B. Grandberg, Esquire, and laid it in the hands of Penn Central, as garnishee, on March 12, 1969. Mr. Mench on January 23, 1968, had driven a tractor trailer sold to him by Buffalo Spring into a car of a freight train operated by Penn Central in the State of New York. Mench thereafter filed an action against Penn Central in the Supreme Court of

the State of New York (afterwards removed to the United States District Court) to recover damages allegedly resulting from that collision. Mench owed Buffalo Spring a balance due on the tractor trailer for which the 1966 judgment was recovered by Buffalo Spring against Mench.

The attachment was served on P. H. Hokemeyer, the Office Supervisor to the Division Superintendent of the Chesapeake Division of Penn Central, located in Baltimore, Maryland. Mench was not at that time and never had been an employee of Penn Central. Mr. Hokemeyer was unable to ascertain from the attachment what money Penn Central had which might possibly be due Mench. He telephoned Mr. Grandberg to discover what the matter was about. Mr. Hokemeyer testified that the following conversation was had with Mr. Grandberg:

> "When I received the attachment papers, and the very little information in the papers, to give me any indication what the case was about, the attachment was all about — so, I called Mr. Grandberg, the plaintiff's attorney, and asked him if he would explain to me just what these papers were sent to the Penn Central. Mr. Mench proceeded to tell me. I am sorry—excuse me — Mr. Grandberg told me that Mr. Mench had purchased an automobile from the Buffalo Spring Equipment Company and that had failed to make payments. So, I said, 'Well, what has this to do with Penn Central?' Mr. Grandberg stated that Mr. Mench and his truck had had an accident with a train somewhere near the area of Elmira, New York and he knew that Mr. Mench had a pending suit against the company, the Penn Central Railroad, and the purpose of this attachment was in the event that any settlement was paid, any payments was paid by the Penn Central to Mr. Mench that he, Mr. Grandberg, or his client, would have first call or judg-

ment or a claim to more moneys that were paid to Mench. That was the essence of the conversation. I immediately went to see Mr. Haun. I turned the papers over to him. This is normal procedure."

As Mr. Hokemeyer indicated he then saw D. W. Haun, the District Claim Agent of Penn Central, and gave the attachment papers to him. This occurred on March 12, 1969. Mr. Haun checked and found that the action brought by Mench against Penn Central was being handled by the Penn Central legal department in New York. Before communicating with that department, he was advised to forward the papers to Penn Central's General Attorney, T. J. Smith, Esquire, in New York. He promptly did this. Buffalo Spring, on May 23, 1969, filed Interrogatories in the attachment case which were served on Mr. Hokemeyer, delivered by him on May 27, 1969, to Mr. Haun and by Mr. Haun forwarded to the legal department in New York on the same day.

No answer to the Interrogatories having been filed by Penn Central, Buffalo Spring, on June 17, 1969, filed a motion for judgment against Penn Central, as garnishee, for the full amount of Buffalo Spring's claim for failure to answer the Interrogatories, pursuant to Rule G56. On the same day, the Superior Court of Baltimore City passed an order *nisi* reciting that judgment was entered for $6,687.00 against Penn Central, as garnishee of Mench, unless cause to the contrary be shown on or before July 3, 1969, provided the copy of the motion and order was served on the garnishee on or before June 26, 1969. Service was again made upon Mr. Hokemeyer, who forwarded this paper to Mr. Haun on June 23; Mr. Haun forwarded the motion and order *nisi* to the Penn Central legal department in New York the same day.

The attachment was duly received in the legal department in New York and was given to Edward J. Murphy, Esquire, one of the attorneys in the office of the General Counsel of Penn Central, for attention. He mistakenly

associated the Maryland attachment practice with the New York practice "under which a creditor seeking payment from a party involved in a pending law suit may file a restraining notice pursuant to which the defendant would be restrained from making payment to the plaintiff unless the creditor is paid or the validity of his claim determined if disputed" and placed the papers in the Maryland case he received in the file assuming "that the prescribed time period would not be adhered to and that there was no need to answer them prior to further developments in the underlying suit by Mench." [1]

No answer having been filed by Penn Central pursuant to the order *nisi*, Buffalo Spring, on July 8, 1969, filed a motion for final judgment against Penn Central, as garnishee, stating that the order *nisi* had been issued, duly served and no cause was shown on or before July 3, 1969, as set forth in the order *nisi*, why judgment should not be entered against the garnishee. The lower court on July 8, 1969, entered judgment against Penn Central, garnishee, in favor of Buffalo Spring for $6,687.00 and costs.

On October 14, 1969, Penn Central filed its motion to strike out the judgment of July 8, 1969, alleging that it had been obtained by fraud, mistake and irregularity; that a misrepresentation had been made; that the attachment was to cover a future judgment which might be obtained by Mench against Penn Central, the garnishee; and that the attachment was solely related to such a potential judgment, which induced Penn Central to take no further action other than to file the documents in the Mench suit file. It was also alleged that Penn Central had a good and valid defense against the attachment in that it is not and never has been indebted to Mench. The affidavits of Hokemeyer, Haun and Murphy were attached in support of the motion to strike.

Buffalo Spring in its answer to the motion to strike generally denied any misrepresentation, fraud, mistake

---

1. The quoted material is taken from Mr. Murphy's affidavit in support of the motion of Penn Central to strike; Mr. Murphy did not testify at the hearing on the motion.

or irregularity and alleged that there was no fraud in the telephone conversation of its counsel with Mr. Hokemeyer; that the "mistake" of Mr. Murphy was not the type of mistake contemplated in Rule 625 a; that the judgment was entered in accordance with the established Maryland practice; and, that the "indifference or neglect" of Penn Central precluded the striking out of the judgment against it.

Judge Howard in his opinion filed May 7, 1970, stated that "there is no evidence of fraud, mistake or irregularity sufficient to justify the striking of Plaintiff's enrolled judgment. Unfortunate as the result in this case may be, it is the Court's opinion that Plaintiff cannot be held responsible therefor."

We cannot say that the conclusions of the lower court were erroneous and we shall affirm the lower court's order of May 7, 1970, denying Penn Central's motion to strike out the judgment.

Judge Horney, for the Court, in *Tasea Investment Corp. v. Dale,* 222 Md. 474, 478-79, 160 A. 2d 920, 923 (1960) reviewed the prior Maryland cases as well as the scope of Rule 625 (now Rule 625 a) and stated:

> "The power to set aside a judgment upon motion has been variously described as a power 'incident to all courts of record,' as a power based on 'equitable grounds' and as the exercise of a '*quasi* equitable power.' See, for example, *Kemp v. Cook,* 18 Md. 130 (1861); *Dorsey v. Gary,* 37 Md. 64 (1872); and *Waters v. Engle,* 53 Md. 179 (1880). In the cases, the grounds upon which final judgments have been set aside after enrollment are stated to be fraud, deceit, mistake, surprise and irregularity. In the present rule, as consolidated and simplified, the only grounds specified are fraud, mistake and irregularity; deceit and surprise having been eliminated. But in all such cases, the court, in addition to requiring the party who moves to set aside an en-

rolled judgment to show by satisfactory proof that he is acting in good faith, with ordinary diligence, and that he has a meritorious defense or cause of action, as the case may be, should also require a showing of such facts and circumstances as will certainly establish the fraud, mistake or irregularity allegedly resorted to in obtaining the judgment sought to be vacated." (citing seven prior decisions of this Court.)

We also held in *Tasea* that a litigant must keep himself informed in regard to what is occurring in a pending case. (222 Md. at 479, 160 A. 2d at 923.)

*Tasea* was cited with approval and followed by us in *Eliason v. Commissioner of Personnel,* 230 Md. 56, 185 A. 2d 390 (1962) ; *Murray v. Fishman Constr. Co.,* 241 Md. 538, 217 A. 2d 357 (1966) ; *Berwyn Fuel & Feed Co. v. Kolb,* 249 Md. 475, 240 A. 2d 239 (1968) ; *Grantham v. Board of County Commissioners for Prince George's County,* 251 Md. 28, 246 A. 2d 548 (1968) ; and *Household Finance Corp. v. Taylor,* 254 Md. 349, 254 A. 2d 687 (1969).

In our opinion, there was no fraud proved in this case. The testimony of Mr. Hokemeyer does not indicate any misrepresentation or false statement by counsel for Buffalo Spring. In substance Mr. Hokemeyer was told what the nature of the case was but there was no statement that Penn Central was, or would not be, required to plead or otherwise follow the usual Maryland practice. Nor is the "mistake" of New York counsel for Penn Central the type of "mistake" within the scope of Rule 625 a. New York counsel may well have been negligent in failing to investigate the requirements of the Maryland law or to refer the matter to Maryland counsel, but it was not a "mistake" justifying a trial court in striking out an enrolled judgment.

In *Tasea, supra,* the defendant in that case after being summoned, had forwarded the suit papers to her insurer. The papers had been received by the insurer but were

lost or misplaced. We held that this was not a "mistake" under Rule 625 a and stated:

> "The defendant-appellee, having admitted that she had been duly summoned, none of the reasons assigned in her affidavit was sufficient to constitute such an irregularity as is contemplated by the rule. She did claim, because she had heard nothing further from her insurer, that she believed her interests were being protected. It was her duty, nevertheless, to keep herself informed as to what was occurring in the case. *Baltimore Luggage Co. v. Ligon, III,* 208 Md. 406, 118 A. 2d 665 (1955). She also complained that she had not been notified of the action regarding the entry of the default judgment. Notice to her of subsequent proceedings, however, was definitely not required. Rule 306 b; *Pumphrey v. Grapes,* 215 Md. 573, 138 A. 2d 916 (1958). With respect to the judgment having been obtained by mistake, the only proof afforded by the affidavits, is to the effect that the insurer of the defendant-appellee—the real party in interest—caused the only 'mistake' that was made in this case. Since the judgment against the defendant-appellee was the result of negligence on the part of her insurer, it is certain that such neglect could not and did not justify exercise by the lower court of its *quasi*-equitable power to set aside the judgment. See *Huntington v. Emery,* 74 Md. 67, 21 Atl. 495 (1891).
> (222 Md. at 479-80, 160 A. 2d at 923-24.)

Penn Central contends that there was an "irregularity" in the obtention of the judgment because the Interrogatories served on it contained the following warning:

> "SIR:—You will please take notice that a rule hath been entered at the office of the Clerk of

the Superior Court of Baltimore City, requiring you to answer the above interrogatories within fifteen days after the service of a copy thereof, and notice of said rule."

This warning—used in the old forms—does not contain the warning provided in Rule G56 that unless answers are filed within 15 days after service "judgment may be entered against him in the full amount of the plaintiff's claim."

In the present case, however, judgment was not taken summarily upon the failure of Penn Central to answer the Interrogatories. Buffalo Spring filed a motion to enter judgment for the full amount against Penn Central for its failure to answer the Interrogatories, obtained an order *nisi,* duly served the motion and order *nisi* on the garnishee, which thereafter failed to answer within the time fixed in the order *nisi.* Under these circumstances, the absence of the warning set forth in Rule G56 was of no importance in the case inasmuch as the warning was effectively given by the order *nisi,* duly served on Penn Central. There was no irregularity in this regard within the meaning of Rule 625 a.

It is clear to us that Penn Central did not use ordinary diligence in preventing the entry of judgment against it.

The result is perhaps a harsh one, but as frequently stated: "Hard cases make bad law," and we do not intend to make "bad law."

As Judge Smith stated for the Court in *Household Finance Corp. v. Taylor,* 254 Md. 349, 355, 254 A. 2d 687, 690 (1969), *supra*—quoting with approval from *Abell v. Simon,* 49 Md. 318, 323-24 (1878):

" 'We are obliged therefore to say that the record shows the garnishee was summoned. He had his day in court, and an opportunity of making his defense to the demands of the plaintiff. If he failed to do so, the fault lies at his door,

and the court has no power after the term has passed to strike out the judgment. It is most desirable of course that there should be an end to litigation, and a judgment is presumed to be a settlement of all matters in dispute in that particular case; and once entered, parties are no longer under the necessity of preserving the evidences upon which their claims rested. By it new rights are acquired, and if stricken out other claims may intervene, and the plaintiff may not only lose his lien, but in many cases the entire debt. The garnishee denies he had anything in his hands liable to this attachment, and it is therefore a hard, very hard case, but to strike out this judgment on a motion made more than two years after it was rendered, and when it appears the garnishee was regularly summoned, would be to break down all safeguards which the law has so wisely thrown around judicial proceedings.' "

*Order of May 7, 1970, affirmed, the appellant to pay the costs.*