483 A.2d 1312

**Martin D. FLEISHER**

v.

**The FLEISHER COMPANY, et al.**

**No. 201, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Nov. 16, 1984.

566

Michael J. Schaefer, Hagerstown, with whom were Urner, McGrory, Nairn, Barton & Schaefer, Hagerstown, on the brief, for appellant.

Richard W. Douglas, Hagerstown, with whom were John R. Salvatore, Richard E. Basehoar and Meyers & Young, P.A., Hagerstown, on the brief, for appellees.

Argued before GILBERT, C.J., MOYLAN, J., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

MOYLAN, Judge.

On this appeal, we are asked to balance the Finality of Judgment Rule (new Md. Rule 2–535; formerly Md.R.P. 625 a) against the possibility that an earlier judgment was fraudulently obtained, and thus not deserving of the protection otherwise accorded final judgments. Recognizing that there must be a definite and foreseeable end to litigation and that ordinarily judgments should not be vacated once the thirty-day review period has expired, *id.*, we also recognize that in exceptional cases judgments may be stricken when specific criteria are met.

In the present case, appellant Martin D. Fleisher claims that the appellees, The Fleisher Company and the Donkey Corporation, failed to prove sufficiently the existence of the

aforementioned criteria, and that Judge John P. Corderman of the Circuit Court for Washington County erred in vacating confessed judgments entered on behalf of the appellant some 3½ years earlier.

A brief review of the pertinent facts indicates that Max Fleisher, now deceased, owned and operated Fleisher's Department Store in Hagerstown, Maryland for a period of approximately sixty years. Max conducted the business through two corporations, The Fleisher Company and the Donkey Corporation, both of which were wholly owned by Max Fleisher.

Throughout the sixty-year period, Max was assisted in managing the department store by his brother Martin, the appellant in this case. Martin had no ownership interest in the business, but during the period of time critical to this case he served as a director and officer.

In 1977, Max Fleisher became physically disabled and entered a nursing home. At that time, Martin Fleisher was appointed his attorney-in-fact by virtue of a Power of Attorney executed by Max.

On June 20, 1979, two confessed judgment notes were executed in favor of "Naron, Wagner & Voslow, Chartered and Martin D. Fleisher," each in the amount of $150,000. The first note was executed by the Fleisher Company as follows: "By: Max Fleisher by Martin Fleisher, Attorney-in-Fact, President." The second note, executed by the Donkey Corporation, read as follows: "By: Max Fleisher, by Martin Fleisher, Attorney-in-Fact for Max Fleisher, President." These notes were prepared by the corporate attorney at the request of the corporate accounting firm, Naron, Wagner & Voslow, Chartered, and Martin Fleisher, the named beneficiaries.

Five days later, on June 25, 1979, the attorney filed the Confession of Judgments in the Circuit Court for Washington County. Service of process was made upon the Resident Agent of the corporation, Martin Fleisher. No

defense to the suits was entered on behalf of the corporation and the judgments were entered.

Subsequently, Max Fleisher died in July, 1982. His daughters, Etta Cohen and Jean Goldman, were later appointed personal representatives of their father's estate, at which time they discovered the existence of the subject judgments and liens. Shortly thereafter, on January 4, 1983, they instituted this action to have the judgments set aside.[1]

■ Both the appellant and the appellees agree upon the legal standard to be applied where a final judgment is sought to be vacated. As Chief Judge Gilbert of this Court recently stated in *Hamilos v. Hamilos*, 52 Md.App. 488, 450 A.2d 1316 (1982), *aff'd* 297 Md. 99, 465 A.2d 445 (1983), the moving party must initially produce evidence sufficient to show that the judgment in question was the product of "fraud, mistake or irregularity."

■ Our review of the record makes clear that upon the facts presented, there was neither a mistake nor an irregularity as those terms are defined in light of Rule 625 a and the pertinent case law such as *Hamilos*.[2] Thus, the initial inquiry in our analysis turns upon whether or not the appellees produced sufficient evidence of fraud. If the fraud was sufficiently proven, then our analysis must proceed to determine whether the appellees acted in good faith and with ordinary diligence in seeking to have the judgment vacated and whether they have a meritorious defense to the underlying judgment. *Owl Club, Inc. of Baltimore v. Gotham Hotels, Ltd.*, 270 Md. 94, 310 A.2d 534 (1973).

---

1. The accounting firm is not a party to this action and will only be mentioned where necessary for resolution of the issues.

2. Mistake means a "jurisdictional mistake," while an irregularity refers to a "defect in process or proceeding." Hamilos, *supra*. While appellees claimed that an "irregularity" was shown where service on the corporation was accomplished through service upon Martin, this is not an irregularity as defined above. Martin was the lawful resident agent of the corporation and could be served as such. If anything, this fact goes to the fraud allegation.

In *Schwartz v. Merchants Mortg. Co.*, 272 Md. 305, 322 A.2d 544 (1974), the Court of Appeals reaffirmed Maryland's adherence to the reasoning and language of the United States Supreme Court in the case of *United States v. Throckmorton*, 98 U.S. 61, 25 L.Ed. 93 (1878), wherein the Court stated:

"Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing." 98 U.S. at 95.[3]

■ The type of fraud outlined above has been characterized as extrinsic fraud, in that it actually prevents an adversarial trial. In determining whether or not extrinsic fraud exists, the question is not whether the fraud operated to cause the trier of fact to reach an unjust conclusion,[4] but whether the fraud prevented the actual dispute from being submitted to the fact finder at all.

■ For the appellant to prevail, we would have to be persuaded that Judge Corderman was clearly erroneous in his finding that such fraud existed. Our review of the

---

**3.** In its affirmance of this Court's action in *Hamilos,* the Court of Appeals once again noted its reliance upon *Throckmorton* in explaining fraud in this context.

**4.** This would be intrinsic fraud. *See, e.g., Schwartz v. Merchants Mortg. Co., supra; Maryland Steel Co. v. Marney,* 91 Md. 360, 46 A. 1077 (1900).

record shows that there was evidence to support such a finding. From that finding of fact, Judge Corderman was correct in ruling that the judgments should be vacated.

 Briefly stated, the pertinent facts would show that the confessed judgments were for the benefit of Martin Fleisher, were executed by Martin Fleisher in his capacity as attorney-in-fact for Max Fleisher and his status as an officer of the corporation, and were served upon the two corporations through Martin Fleisher as resident agent. Thus, Martin was involved in each step of the process, changing roles as the circumstances warranted.

Additionally, the attorney for the corporation drafted the notes, filed them in the circuit court on behalf of the plaintiffs, and decided on behalf of the defendant corporation that no defense should be offered. At the motion hearing before Judge Corderman, the attorney admitted that there was one, and possibly two, defenses to the notes, since the corporate charters had been forfeited prior to the execution of the notes, and he had not been provided a factual basis for the $300,000.00 figure. The attorney indicated that no defenses were filed because he believed the charges were legitimate in light of the fact that Martin had worked in the business for approximately sixty years. Judge Corderman correctly observed that this was not a personal matter, but a corporate one.

While the fact that no one advised Max Fleisher of the existence of these notes is not necessarily significant because of his physical state, it is notable that the only persons aware of these transactions were the three interested parties, Martin Fleisher, Mr. Wagner of the accounting firm, and the attorney (attorney fees). Without going into detail concerning the numerous possible breaches of fiduciary duty running rampant throughout this series of events, suffice it to say that Judge Corderman had ample basis upon which to find the requisite extrinsic fraud to vacate the confessed judgments.

In addition to showing fraud (in the absence of mistake or irregularity), the appellees had the burden of showing that

they acted in good faith and with ordinary diligence, and that they presently have a legitimate defense to the judgments. It seems clear that the appellees moved to vacate the judgments as soon as they learned of their existence and had investigated the facts, thus showing ordinary diligence.

While appellant claims that the fact that Ms. Cohen, a corporate officer, bought an interest in half of the judgments in an individual capacity is an indication of lack of good faith, we fail to make the connection. Certainly, there are various reasons, strategical and otherwise, for Ms. Cohen to make such a deal.

Lastly, appellant contends that the appellees have failed to show that they have a meritorious defense to the judgments. We note that appellees have at least two possible defenses to the judgments, namely, lack of consideration and fraud.

In light of all of these factors, appellees have met the requisite burden in attempting to have these judgments vacated, and the decision of the lower court is hereby affirmed.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.