574 A.2d 24

**James A. HRESKO**

v.

**Marie C. HRESKO.**

**No. 1460, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

June 1, 1990.

John W. Trotz (James L. Prichard, on the brief), Baltimore, for appellant.

Cynthia E. Young, Annapolis, for appellee.

Argued before GILBERT, C.J., and BISHOP and ALPERT, JJ.

ALPERT, Judge.

In *Hamilos v. Hamilos*, 297 Md. 99, 465 A.2d 445 (1983), the Court of Appeals held that an enrolled decree will not be vacated even though obtained by use of forged documents, perjured testimony, or any other frauds which are intrinsic to the trial of the case itself. In the present case, this court encounters for the first time the question of whether the fraudulent concealment of assets by one spouse during negotiations leading to a separation and property settlement agreement subsequently incorporated into a divorce decree is intrinsic or extrinsic to the divorce litigation.

## Facts

During the spring or early summer of 1985, James and Marie Hresko decided to terminate their 24–year marriage. The parties agreed to and signed a separation and property

settlement agreement on July 10, 1985. According to terms of the settlement agreement, James (appellant) agreed to pay $400 per month in child support, to pay the total costs of the minor child's college education, and to assume payment of certain family consumer debts. The agreement further provided that Marie (appellee) had the option of buying out appellant's interest in the family home three years from the date of the settlement agreement.

On August 4, 1987 appellee filed a Complaint for Absolute Divorce against appellant in the Circuit Court for Anne Arundel County. On October 5, 1987, appellant filed an answer to the complaint which did not contest the divorce. A hearing before Master Malcolm M. Smith was held on December 7, 1987 with only appellee and her counsel present. Based on the master's findings, the Honorable James A. Cawood, Jr. entered an order of divorce a vinculo matrimonii on December 23, 1987. A voluntary separation agreement that the parties had executed two years earlier was incorporated but not merged into the order.

In the summer of 1988, appellee exercised her option to buy out appellant's interest in the family home and on the day of settlement, August 4, 1988, paid appellant $30,000 in cash for his one-half interest. Appellant had assumed that appellee would require a mortgage to purchase his interest in the house and claimed that he was "stunned" when she fulfilled her obligation with cash. He then became convinced that a fraud had been perpetrated against him during the 1985 negotiations that led to the property settlement. This alleged fraud involved the concealment, by appellee, of at least $30,000 in cash at the time of the agreement. As a result of this belief, appellant filed a Motion to Revise Judgment and to Rescind Separation and Property Settlement Agreement, together with a memorandum of law and an affidavit. Appellee responded by filing a motion to dismiss appellant's motion. Judge Cawood held a hearing on appellee's motion on June 7, 1989. After briefly holding the matter sub curia, the judge issued a

written opinion on June 13, 1989, granting appellee's motion to dismiss appellant's motion to revise judgment.

## Extrinsic vs. Intrinsic Fraud

■ In an action to set aside an enrolled judgment or decree, the moving party must initially produce evidence sufficient to show that the judgment in question was the product of fraud, mistake or irregularity. *Fleisher v. Fleisher*, 60 Md.App. 565, 570, 483 A.2d 1312 (1984). Furthermore, it has long been black letter law in Maryland that the type of fraud which is required to authorize the reopening of an enrolled judgment is extrinsic fraud and not fraud which is intrinsic to the trial itself. *Schneider v. Schneider*, 35 Md.App. 230, 238, 370 A.2d 151 (1977).

■ Appellant contends that appellee concealed from him an unknown, but apparently sizable, sum of money at the time the two parties were negotiating the subject separation and property settlement agreement. In an affidavit accompanying his motion, appellant alleges that during negotiations between the parties prior to the agreement, appellee represented and constantly reiterated to him that she had no money in any account or investment except for a small reserve account used for her expenses during the summer when she was not working or receiving a salary from her public school teaching job. As evidence of this misrepresentation, appellant referred to the following three pre-settlement incidents. In the summer of 1984, appellee approached appellant and stated that she wanted to take their youngest son, Joseph, with her on a trip to England, but was unable to do so because she did not have enough money. As a result of this representation, appellant paid for his son's trip. Secondly, in May of 1985, the parties together determined that they needed a new roof on their home but were unable to afford to pay a contractor. Accordingly, they decided that appellant would put the roof on himself. Thirdly, appellant refers to a handwritten letter in which appellee stated that she had no other monies other than the aforementioned summer reserve account. Appel-

lant claims that, based on these incidents and appellee's frequent assertions that she was not hiding money, he entered into the subject agreement.[1]

Assuming without deciding that appellant has produced facts and circumstances sufficient to establish fraud, we will address whether this alleged fraud is extrinsic or intrinsic to the trial itself. We hold, based on appellant's claims and verified statements, that appellee's alleged concealment of funds is an example of, at most, intrinsic fraud.

Intrinsic fraud is defined as "[t]hat which pertains to issues involved in the original action or where acts constituting fraud were, or could have been, litigated therein." *Black's Law Dictionary* (5th ed. 1979). Extrinsic fraud, on the other hand, is "[f]raud which is collateral to the issues tried in the case where the judgment is rendered." *Id.*

■ Fraud is extrinsic when it actually prevents an adversarial trial. *Fleisher,* 60 Md.App. at 571, 483 A.2d 1312. In determining whether or not extrinsic fraud exists, the question is not whether the fraud operated to cause the trier of fact to reach an unjust conclusion, but whether the fraud prevented the actual dispute from being submitted to the fact finder at all. *Id.* In *Schwartz v. Merchants Mortgage Co.,* 272 Md. 305, 309, 322 A.2d 544 (1974), the Court of Appeals, quoting from *United States v. Throck-*

---

1. In support of his position, appellant stated under oath, *inter alia:*
   Therefore, I believe that in August of 1988 she laid out over $43,000 in cash at one time.... At the time of our separation in July 1985, and based upon her representation that she had no moneys available to her, I agreed to assume payment on all of our jointly incurred debts.

   ....

   I personally know that Marie Hresko's income did not significantly change in the time since we signed the separation agreement. Hence, it would have been impossible for her to accumulate, in the time since our separation agreement, the moneys needed to buy my interest in the house, pay for the previously enumerated house repairs and new autos, take the two European vacations, etc. As seen in my supplemental affidavit, these expenditures totalled over $43,000.

*morton,* 98 U.S. 61, 25 L.Ed. 93 (1878), provided examples of what would be considered extrinsic fraud:

Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; ... or where the attorney regularly employed corruptly sells out his client's interest in the other side—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.

*Schwartz,* 272 Md. at 309, 322 A.2d 544.

Appellant contends that appellee's alleged fraudulent representations were extrinsic to the subsequent divorce action because they took place over two years before its inception and served to prevent appellant from taking advantage of his right to an adversarial proceeding. He argues that appellee's concealment is a "fraud or deception practiced upon the unsuccessful party by his opponent as by keeping him away from court or making a false promise of a compromise."

As stated above, the issue of whether appellee's alleged fraudulent concealment of assets during pre-separation agreement negotiations is intrinsic or extrinsic to the divorce litigation is one of first impression in Maryland courts. Upon looking to other jurisdictions for guidance, we find conflict among our sister states.

California courts have uniformly recognized that the failure of one spouse to disclose the existence of community property assets constitutes extrinsic fraud. *In Re Marriage of Modnick,* 33 Cal.3d 897, 191 Cal.Rptr. 629, 663 P.2d

187 (1983). The principle underlying these cases is that each spouse has an obligation to inform the other spouse of the existence of community property assets. *Id.* 191 Cal. Rptr. at 633, 663 P.2d at 191. This duty stems in part from the confidential nature of the marital relationship and from the fiduciary relationship that exists between spouses with respect to the control of community property. *Id.*

In *Daffin v. Daffin,* 567 S.W.2d 672 (Mo.App.1978), the Missouri Court of Appeals set aside property provisions of a dissolution of marriage decree. There, equity intervened, not because of the deception that affected the substance of the court's judgment (the concealment of assets) but because of the husband's breach of the relationship of confidence between husband and wife. *See also Compton v. Compton,* 101 Idaho 328, 612 P.2d 1175 (1980) (where Idaho court stated that fiduciary duty extends to parties' negotiations leading to the formation of the property settlement during marriage and requires, at least, a disclosure by both parties of all information within their knowledge regarding the existence of community property).

Other courts have found extrinsic fraud holding, as appellant would have us do, that a spouse's concealment or misrepresentation of assets can be classified as an intentional act by which the one spouse has prevented the other spouse from having a fair submission of the controversy and thus amounts to extrinsic fraud. *Pilati v. Pilati,* 181 Mont. 182, 592 P.2d 1374, 1380 (1979).

Other jurisdictions have reached the opposite result, determining that the fraudulent concealment of assets by one spouse during a property settlement agreement is intrinsic to the divorce litigation. Recently, in *Altman v. Altman,* 150 A.D.2d 304, 542 N.Y.S.2d 7, 9 (1989), the New York Supreme Court, Appellate Division, held that alleged fraud in the negotiations of the separation agreement involves the issue in controversy and is not a deprivation of the opportunity to make a full and fair defense. The court reasoned that the alleged misrepresentations of financial status are in essence no different from any other type of perjury

committed in the course of litigation and thus constitute intrinsic fraud.

Similarly, in *Chapman v. Chapman,* 591 S.W.2d 574, 577 (Tex.Civ.App.1979), the Texas court refused to overturn on the basis of fraud a property settlement agreement incorporated into a divorce decree. The court stated that the fraud alleged at most related to untruths which misled the wife into acquiescence and approval of an unjust division of property. Because these misrepresentations bore only on issues in the trial (or which could have been at issue in the trial), they, therefore, amounted to no more than intrinsic fraud. *Id. See also Hewett v. Zegarzewski,* 90 N.C.App. 443, 368 S.E.2d 877 (1988) (where court held that allegation that husband had made fraudulent misrepresentations as to his assets in procuring the separation agreement was evidence only of intrinsic fraud).

▇ We are persuaded that these latter cases are the better reasoned ones. Misrepresentations or concealment of assets made in negotiations leading to a voluntary separation and property settlement agreement later incorporated into a divorce decree represent matters intrinsic to the trial itself. In fact, a determination of each party's respective assets, far from being a collateral issue, would seem to be a central issue in a property settlement agreement.

We reject appellant's contention that appellee's misrepresentations are extrinsic to the divorce action because it occurred two years prior to the action and prevented appellant from taking advantage of his right to an adversarial proceeding. The property settlement agreement, which appellant asserts was derived from the fraudulent representations of appellee,[2] was the same agreement that the parties submitted to the court for incorporation into the divorce

---

2. We note that the actual settlement agreement made no representations as to the recent assets of either party. Furthermore, Subsection 18.2 of the agreement expressly states that there are no other representations, statements, understandings, promises, either oral or written, which are relied upon by either party.

decree. Appellant had every opportunity to examine these representations through discovery methods or in court.[3] Instead, he chose to file an uncontested answer and permitted the matter to go to judgment.

In *Hamilos, supra,* the Court of Appeals held that an enrolled decree would not be vacated even though obtained by use of perjured testimony. As the trial judge stated in his written opinion and order, "It would be anomalous to give an alleged false statement in a letter (or given orally) greater stature than perjury during the course of the proceedings. If any fraud exists, it is intrinsic to the proceedings, which is not sufficient." We agree.

No "extrinsic fraud" prevented appellant from seeking trial and this court will not, therefore, reopen the decree in the present case. To rule otherwise would be to subject every enrolled divorce decree that includes a property settlement to revision upon discovery of alleged fraud in the inducement of the settlement. Public policy of this state demands an end to litigation once the parties have had an opportunity to present in court a matter for determination, the decision has been rendered, and the litigants afforded every opportunity for review. *Schneider,* 35 Md.App. at 238, 370 A.2d 151.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.

---

**3.** Subsection 1.1 provides:
Nothing contained in this Agreement shall be construed as a waiver by either party of any ground for divorce which either party may now or hereafter hold against the other party, the same being hereby expressly reserved.