935 A.2d 457

**Charlain BLAND**

v.

**Joseph HAMMOND, et al.**

**No. 1843, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Nov. 6, 2007.

Chantelle M. Custodio (Paul A. Turkheimer, Meyers, Rodbell & Rosenbaum PA on the brief), Riverdale Park, for appellant.

James M. Brault (Melissa G. Brault, Brault Graham, LLC on the brief), Rockville, for appellee.

Argued before ADKINS, SHARER, WOODWARD, JJ.

SHARER, J.

In this appeal we are asked to determine whether the unprofessional conduct of an attorney, resulting in the dismissal of his client's tort action, amounted to fraud and, if so, whether the fraud was extrinsic and, thus, a basis for vacating

the judgment of dismissal. We shall hold that the conduct of the attorney did not, on the extant facts, rise to the level of extrinsic fraud.

Charlain Bland, appellant, excepts to the denial of her motion to vacate judgment by the Circuit Court for Prince George's County. Bland raises two issues, which we have rephrased as:[1]

Whether the unprofessional conduct of a litigant's attorney, resulting in dismissal of the litigant's suit, amounts to extrinsic fraud that would justify vacating the judgment.

For the reasons that follow, we shall affirm the judgment of the circuit court.

## FACTUAL and PROCEDURAL BACKGROUND

The genesis of appellant's claim against Joseph Hammond and Sylvia Hammond, appellees, is a rear-end collision that occurred in Prince George's County on June 15, 1998. Bland was injured and incurred more than $25,000 in hospital and other medical expenses.

### The Underlying Litigation

In July 1998, Bland retained Michael J. Graham, a member of the Maryland bar, to represent her in her tort claim. On June 13, 2001, just two days before the expiration of the statute of limitations, Graham filed a complaint on Bland's behalf in the Circuit Court for Prince George's County. What, if any, effort Graham made on behalf of Bland in the interval between his having been retained, and the filing of the complaint, is not clear from the record.

Thereafter, appellees, through counsel, filed a timely answer to the complaint and, on December 31, 2001, served Graham with interrogatories and a request for production of docu-

---

1. In her opening brief, appellant asserts:
 1. Fraud by a party's attorney is a proper ground for vacating a judgment.
 2. The lower court erred in denying appellant's motion to vacate.

ments. Bland alleges that Graham did not contact her to obtain information to answer the discovery. Not having received the requested discovery, appellees filed a motion to compel on July 31, 2002. Again, Graham did not discuss the motion with Bland, nor did he respond to the motion.

On August 27, 2002, at a pre-trial/scheduling conference, Graham signed, on behalf of Bland, a consent order agreeing to produce the requested discovery within 30 days. He did not comply with the consent order. Bland did not attend the pre-trial conference and Graham allegedly did not advise her of what occurred at the conference.

Because the discovery was still not forthcoming, appellees filed, on December 9, 2002, a motion for sanctions. Graham responded to the motion for sanctions by requesting an extension of time to provide discovery. The court took no action on the motion for sanctions, but still Graham did not comply. By order of January 9, 2003, the court granted appellees' motion to compel, directing Graham to provide discovery by February 15, 2003. Again, Graham did not provide the discovery, nor did he discuss with Bland the need to do so.

Appellees filed a second motion for sanctions on March 7, 2003. Graham did not respond to the motion, nor did he advise Bland of its filing. Finally, on April 9, 2003, the court dismissed Bland's suit, without prejudice, as a sanction for not providing the requested discovery. Graham did not advise Bland of the dismissal but, on April 15, 2003, sent to Bland, by fax transmission, a draft of answers to interrogatories. Bland asserts that, throughout the period of Graham's representation, her repeated attempts to contact him to discuss her case were unsuccessful.

Ultimately, Bland conducted a personal search of the case file in the circuit court and, in December, 2004, learned that her suit had been dismissed without prejudice. Of course, by that time, limitations on her claims against appellees had expired. She next filed a complaint with the Attorney Grievance Commission, only to learn that Graham had been suspended indefinitely by the Court of Appeals on November 5,

2004.[2] It appears from the record that, even after having been suspended, Graham continued to mislead Bland to believe that he was still actively engaged in representing her.

Bland filed a legal malpractice action against Graham in July 2005, asserting claims of breach of contract, breach of fiduciary duty, fraudulent misrepresentation, and fraudulent concealment. Graham filed an answer to the complaint, but did not timely respond to discovery. Judgment by default was entered by the circuit court against Graham on February 22, 2006. Bland has been unsuccessful in her collection efforts and now avers that Graham is uninsured and judgment proof.

## The Motion to Vacate

Bland filed her motion to vacate on February 23, 2006, contending that Graham's conduct in dealing with her case constituted extrinsic fraud that entitled her to set aside the April, 2003 judgment, pursuant to Md.Code, Cts. & Jud. Proc. § 6–408 and Md. Rule 2–535(b). Appellees filed a timely opposition to the motion to vacate. The circuit court, after considering the parties' memoranda, supplemental memoranda, and argument in open court, filed a memorandum and order of court on September 26, 2006, denying appellant's motion to vacate. This timely appeal followed.

## DISCUSSION

We review the denial of a motion to vacate an enrolled judgment under an abuse of discretion standard. *Das v. Das*, 133 Md.App. 1, 15, 754 A.2d 441 (2000). Abuse of discretion occurs

"where no reasonable person would take the view adopted by the [trial] court," or when the court acts "without refer-

---

**2.** The record of the disciplinary proceedings have not been provided to this Court. Bland asserted in her Motion to Vacate that Graham was suspended for failing to communicate with clients, lack of diligence, failure to respond to Bar Counsel, failure to refund fees, failing to surrender documents, and for filing a misleading motion. Indeed, Bland asserts that Graham did not comply with her request that he deliver the file of her case.

ence to any guiding rules or principles." It has also been said to exist when the ruling under consideration "appears to have been made on untenable grounds," when the ruling is "clearly against the logic and effect of facts and inferences before the court," when the ruling is "clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result," when the ruling is "violative of fact and logic," or when it constitutes an "untenable judicial act that defies reason and works an injustice."

*Id.* at 15, 754 A.2d 441. In particular, fraud, which appellant alleges, must be proven by clear and convincing evidence. *Id.* at 17, 754 A.2d 441.

The circuit court in the case *sub judice* found that appellant "simply laid out facts to suggest negligence, and attempts [by Graham] to conceal [his] negligence. This is not extrinsic fraud as contemplated by the applicable case law or facts." We agree, and hold that the conduct of appellant's attorney does not fall within the definition of extrinsic fraud as contemplated by established Maryland law.

### Revisory Power

The issue before us brings into play the revisory power of the trial court, the authority for which is found in the parallel provisions of Maryland Code, Courts and Judicial Proceedings, § 6–408 and Md. Rule 2–535 that establish a 30 day revisory window.[3] After the 30 day revisory period has passed, a circuit court can vacate or revise an enrolled judgment only upon a showing of fraud, mistake, irregularity, or the failure of the court to perform a duty required by statute or rule. Md. Rule 2–353(b). The purpose of the rule is to

---

**3.** Section 6–408 of the Courts and Judicial Proceedings Article provides:

> For a period of 30 days after the entry of a judgment, or thereafter pursuant to motion filed within that period, the court has revisory power and control over the judgment. After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court of the clerk's office to perform a duty required by statute or rule.

ensure the finality of judgments. *See Das, supra,* 133 Md. App. at 17–18, 754 A.2d 441. The Maryland cases are legion that recognize the principle that there must be a definite and foreseeable end to litigation, and that ordinarily judgments should not be vacated after the passage of the 30–day review period. *Fleisher v. Fleisher Co.,* 60 Md.App. 565, 568, 483 A.2d 1312 (1984). Nonetheless, we also recognize that in exceptional cases, judgments may be vacated or revised when specific criteria are met. *Id.* The rules of finality apply to all final judgments, including those entered by default. *See Das, supra,* 133 Md.App. at 17–18, 754 A.2d 441, (citing *Maggin v. Stevens,* 266 Md. 14, 16, 291 A.2d 440 (1972)).

The terms "fraud," "mistake," and "irregularity," as applied in Md. Rule 2–535 and its predecessor, Md. Rule 625(a), have been thoroughly defined by the opinions of this Court and the Court of Appeals. "Fraud," "mistake," and "irregularity" are to be "narrowly defined and strictly applied." *See Autobahn Motors, Inc. v. Baltimore,* 321 Md. 558, 562, 583 A.2d 731 (1991) (citing *Andresen v. Andresen,* 317 Md. 380, 389, 564 A.2d 399 (1989)) (quoting *Platt v. Platt,* 302 Md. 9, 485 A.2d 250 (1984)).

### Negligence or Fraud?

Appellant asserts that Graham's conduct went beyond mere negligence or legal malpractice and rose to the level of fraud. Appellees respond that Graham's handling-or non-handling-of Bland's case was nothing more than traditional legal negligence, and not a fraud upon either Bland or the court. Appellees argues that

[a]ppellant's attempt to dress up her attorney's malpractice by calling it "fraud" lacks substance. The case was dismissed because of Graham's failures to comply with court orders-not because a fraud was perpetrated on her or the court. That Graham did not inform Appellant of the court rulings, including the fact that the case had been dismissed as a result of his malpractice, may constitute a breach of counsel's duties owed to a client and violation of the Rules of

Professional Conduct; however, it does not amount to the type of fraud sufficient to set aside a judgment.

An attorney is held to the Rules of Professional Conduct, including Rule 1. 1, which requires that "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." In turn, Rule 1.4, Communication, requires:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent ... is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information;

\* \* \*

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Graham's violations of those duties to Bland are abundantly clear.

Deviation from the Rules of Professional Conduct does not necessarily form the basis for a finding of legal malpractice. Md. Rules of Professional Conduct, Scope (20). The rules "are not designed to be a basis for civil liability." *Id.* However, the Court of Appeals has found that in some circumstances, such as fee-sharing agreements, violation of a rule may be evidence of a breach of the applicable standard of care. In *Post v. Bregman,* 349 Md. 142, 168, 707 A.2d 806 (1998) the Court, holding that Rule 1.5(e) constitutes a supervening statement of public policy to which fee-sharing by lawyers are subject, said:

[T]he enforcement of Rule 1.5(e) is not limited to disciplinary proceedings. It may extend to holding fee-sharing agreements in clear and flagrant violation of Rule 1.5(e)

unenforceable, for, following the observation of the California court in *Scolinos v. Kolts,* supra, 37 Cal.App.4th at 640, 44 Cal.Rptr.2d 31, it would indeed be at least anomalous to allow a lawyer to invoke the court's aid in enforcing an unethical agreement when that very enforcement, or perhaps even the existence of the agreement sought to be enforced, would render the lawyer subject to discipline.

As with negligence generally, deviation from the standard of care expected of an attorney may be malpractice. In order to recover based on legal malpractice, the claimant must establish: "(1) the attorney's employment; (2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client." *Kendall v. Rogers,* 181 Md. 606, 611, 31 A.2d 312 (1943); *Pickett, Houlon & Berman v. Haislip,* 73 Md.App. 89, 96, 533 A.2d 287 (1987); *Glasgow v. Hall,* 24 Md.App. 525, 529, 332 A.2d 722 (1975).

In the final analysis, there can be little doubt that Graham's failures in his representation of Bland amount to negligence and legal malpractice. The core question is whether Graham's actions, and inactions, amount to fraud and, if so, whether the fraud was extrinsic so as to justify the setting aside of an enrolled judgment.

### Fraud

Maryland's strong public policy favoring finality and conclusiveness of judgments can be overcome only by a showing " 'that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy.' " *Schwartz v. Merchants Mortg. Co.* 272 Md. 305, 309, 322 A.2d 544 (1974) (quoting *Pico v. Cohn,* 91 Cal. 129, 133, 25 P. 970 (1891)). The Court of Appeals has noted that "[t]he negligence or mistakes of the agents and counsel of the complaining party, are not sufficient to justify a court in striking out an enrolled judgment or decree." *Wooddy v. Wooddy,* 256 Md. 440, 453, 261 A.2d 486 (1970).

 Only extrinsic fraud will justify the reopening of an enrolled judgment; fraud which is intrinsic to the trial itself will not suffice. *See Tandra S. v. Tyrone W.*, 336 Md. 303, 315, 648 A.2d 439 (1994); *Oxendine v. SLM Capital Corp.*, 172 Md.App. 478, 915 A.2d 1030 (2007). Fraud is extrinsic when it actually prevents an adversarial trial, but is intrinsic when it is employed during the course of the hearing or trial which provides the forum for the truth to appear. *See Manigan v. Burson*, 160 Md.App. 114, 862 A.2d 1037 (2004). Intrinsic fraud is not a ground upon which an enrolled judgment may be vacated.

 In determining whether extrinsic fraud exists, "the question is not whether the fraud operated to cause the trier of fact to reach an unjust conclusion, but whether the fraud prevented the actual dispute from being submitted to the fact finder at all." *Hresko v. Hresko*, 83 Md.App. 228, 232, 574 A.2d 24 (1990), (citing *Fleisher, supra*, 60 Md.App. at 571, 483 A.2d 1312). The keystone definition of extrinsic fraud was provided by the United States Supreme Court in *United States v. Throckmorton*, 98 U.S. 61, 65–66, 25 L.Ed. 93 (1878):

> Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,-these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.

Maryland courts have firmly adhered to the *Throckmorton* definition of extrinsic fraud. *See Oxendine, supra*, 172 Md. App. at 492–93, 915 A.2d 1030 (citing *Schwartz, supra*, 272

Md. at 309, 322 A.2d 544; *Das, supra,* 133 Md.App. at 18, 754
A.2d 441; *Fleisher, supra,* 60 Md.App. at 571, 483 A.2d 1312).

There are notably few instances in Maryland jurisprudence
where a judgment has been vacated on the basis of extrinsic
fraud. In *Fleisher,* this Court affirmed the trial court's grant
of appellee's motion to vacate based on a finding of extrinsic
fraud. There, we reasoned that the appellant's self-serving
and devious actions served to prevent appellees from challeng-
ing the disputed transactions before confessed judgments
were entered. *Fleisher, supra,* 60 Md.App. at 571–72, 483
A.2d 1312. Appellant relies upon *Fleisher* for the proposition
that "fraud on the part of one's attorney may indeed be a basis
for vacating a judgment under Maryland law." Her reliance
is misplaced.

Martin Fleisher was attorney-in-fact for his incompetent
brother, Max. Martin thereafter, as attorney-in-fact, executed
two promissory notes, with confession of judgment clauses, in
favor of himself. He then filed the notes and obtained judg-
ment by confession against Max. Martin directed service of
process upon the resident agent of Max's corporation-himself.
As the controlling officer of the corporation, Martin raised no
defense on Max's behalf. Ultimately, after Max's death, the
fraud was discovered and the confessed judgments were vacat-
ed.

The facts of *Fleisher* are clearly inapposite to the circum-
stance of the instant case. Martin Fleisher was effectively
controlling both sides of the confessed judgment cases. Gra-
ham, as Bland's attorney, was not controlling both sides, for
appellees here were represented by opposing-and contesting-
counsel throughout.

Appellant also relies on *Das, supra,* wherein extrinsic fraud
by an attorney was found sufficient to set aside an enrolled
judgment. Again, we find that reliance to be misplaced. In
*Das,* the parties were involved in a child custody dispute. Mr.
Das complained that Mrs. Das had committed fraud by provid-
ing the court with an incorrect address for Mr. Das, who, as a
result, was not served with process, resulting in the entry of a

default. The court ruled that the nature of Mrs. Das's conduct did not rise to the level of extrinsic fraud, for Mr. Das himself had created the problem by leaving the country without providing the court with his current address.

In sum, on the record presented, we find that Graham's conduct was, for the most part, negligent and amounted to legal malpractice. We further, conclude, however, that Graham's conduct after the circuit court dismissed the tort action (on April 9, 2003) reached the level of fraud. As we have discussed, *supra*, subsequent to the dismissal, Graham continued to assure Bland of the viability of her claim. And, beyond that, he continued to mislead her after the Court of Appeals had suspended him from the practice of law, more than one year later, on November 5, 2004. Nonetheless, as we shall discuss, his fraud did not constitute extrinsic fraud

## Extrinsic Fraud

We dealt extensively with the concept of extrinsic fraud in *City of College Park v. Jenkins*, 150 Md.App. 254, 819 A.2d 1129 (2003), (vacated, 379 Md. 142, 840 A.2d 139 (2003)), a case centered on a claim of title by adverse possession.

More than 30 days after default judgments were entered, the City of College Park filed motions to intervene and motions to vacate the judgments, asserting that the City had an interest in the subject properties, and that the plaintiff had committed extrinsic fraud. The claim of extrinsic fraud was based on the plaintiff's alleged knowledge of the City's interest, and failure to include the City as a party to the litigation. We held the claimant's conduct to be a clear example of extrinsic fraud:

> [I]f fraud exists, it is extrinsic because it satisfies the definition of extrinsic fraud ... If appellant's allegations are true, it should have been made a party to appellee's quiet title actions. The fact that appellee alleged that the last interest of record showed legal title in Beall and Rogers and that there were "no [other] persons claiming to have a hostile, outstanding right to said parcel of land" permitted service of process by publication as compared to naming

appellant as a defendant and serving it with process. This is the type of fraud that the rule contemplates because it "actually prevent[ed] an adversarial trial."

*Jenkins, supra,* 150 Md.App. at 270, 819 A.2d 1129 (citing *Hresko, supra,* 83 Md.App. at 232, 574 A.2d 24).[4]

 The case *sub judice* is clearly distinguishable from the few instances in Maryland where extrinsic fraud has been found to support the vacating of an enrolled judgment. Bland makes no allegation that the opposing party deliberately mislead her about the status of her lawsuit. We find nothing in the facts before us—and before the circuit court—to suggest that appellant's attorney connived to defeat her claim or colluded with opposing counsel. The definition of extrinsic fraud, as originally pronounced in *Throckmorton,* controls our conclusion.

Bland, while recognizing the limitations imposed by *Throckmorton,* presses the argument that the examples of extrinsic fraud stated in *Throckmorton* are neither exclusive nor exhaustive. In particular, she contends that Graham's actions fall into the category of "cases which show that there has never been a real contest in the trial or hearing of the case." See *Throckmorton,* supra, 98 U.S. at 65–66. We disagree. Bland is correct that there has never been a "real contest in the trial ... of the case." However, that failure is not because of a fraud perpetrated upon her or the court; rather the failure lies in Graham's negligent representation of her resulting in the dismissal of her suit.

In *Attorney Grievance Com'n of Maryland v. Lane,* 367 Md. 633, 790 A.2d 621 (2002), involving facts not totally dissimilar to those presented in the instant case, the respondent attorney engaged in a pattern of continued deceitful misrepresentations

---

**4.** The Court of Appeals vacated the judgment of the circuit court, stating "We vacate the trial court's orders denying respondent's motion to consolidate and motion to intervene due to the record's silence as to pertinent facts necessary for the proper examination of those issues."

of the most egregious nature to the extent that his conduct amounted to intentional dishonesty. He ... failed to diligently act on his clients' behalf and he then compounded this failure by engaging in a pattern of deceitful and lying conduct designed to conceal his lack of diligence.

*Id.* at 647, 790 A.2d 621.

The Court of Appeals ordered disbarment as the appropriate sanction for respondent's "repeated material misrepresentations that constitute a pattern of deceitful conduct, as opposed to an isolated instance ...," *Id.* at 647, 790 A.2d 621. The Court characterized Lane's actions as professional misconduct, not fraud. The instant case presents somewhat similar conduct-a breach of the duties owed to a client, not fraud. Graham owed appellant duties of competence, diligence, and communication. However, "[t]he negligence or mistakes of the agents and counsel of the complaining party, *are not sufficient* to justify a court in striking out an enrolled judgment or decree." *Wooddy, supra,* 256 Md. at 453, 261 A.2d 486 (emphasis added). We hold that neither Graham's malpractice, nor his violation of the Rules of Professional Conduct, constitute extrinsic fraud that justifies vacating the enrolled judgment.

### Federal Rule 60(b)

We shall next discuss appellant's Federal Rules of Civil Procedure argument. Federal Rule 60(b) **Relief from Judgment or Order,** provides, in relevant part:

(b) **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On Motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceedings for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year

after the judgment, order, or proceeding was entered or taken.

Appellant relies on Federal Rule 60(b) and case law from other jurisdictions as persuasive authority in her effort to have us expand the Maryland rule. However, a comparison of the grounds provided in Federal Rule 60(b) with those afforded by Md. Rule 2–535(b) reveals that the revisory power of a Maryland court to vacate an enrolled judgment is significantly narrower than the relief available under Federal Rule 60(b). Likewise, the rules of other jurisdictions provide considerably more breadth in the setting aside of a judgment.

In *Andresen v. Andresen*, 317 Md. 380, 564 A.2d 399 (1989), the Court of Appeals observed that the broad language of the Federal rule "vests a court with wide discretion." *Id.* at 385, 564 A.2d 399. The Court noted further that

> [s]ome thirty five (35) states have adopted language substantially the same as in FRCP 60(b)(5) and or 60(b)(6). Eight states have reserved equity or other broad powers to revise a final judgment. The remaining group of states, into which we believe Maryland properly fits, limits the right of the court to revise or vacate the judgment to the specific grounds set forth in the applicable statute or rule.

*Id.* (Footnotes omitted.)

"We have narrowly defined and strictly applied the terms fraud, mistake, irregularity, and clerical error...." *Id.* at 389, 564 A.2d 399. Maryland appellate courts have consistently said that a court's revisory powers do not provide for the amendment of an enrolled judgment on the ground of " 'fundamental unfairness.' " *Tandra S., supra,* 336 Md. at 325, 648 A.2d 439 (citing *Platt, supra,* 302 Md. at 14, 485 A.2d 250). We have also emphasized that " 'all the power the courts of this State have to revise and control enrolled judgments and decrees' " is embraced by the statute and rules covering the matter. *Platt, supra,* 302 Md. at 15, 485 A.2d 250 (quoting in part *Eliason v. Comm'r of Personnel,* 230 Md. 56, 59, 185 A.2d 390, (1962)). *See also Meyer v. Gyro Transp. Systems,* 263 Md. 518, 527, 283 A.2d 608,("Rule [2–535] embraces all of

the power the court has to revise and control [enrolled] judgment[s]").

Our affirmance of the circuit court's denial of Bland's motion to vacate is in accord with Maryland's strong public policy favoring the finality of judgments, which "demands that there be an end to litigation." *Schwartz, supra,* 272 Md. at 308, 322 A.2d 544. Our cases have "rigorously emphasized the finality of judgments." *Andresen, supra,* 317 Md. at 385, 564 A.2d 399 (citing *Penn Cent. Co. v. Buffalo Spring & Equipment Co.,* 260 Md. 576, 273 A.2d 97 (1971)) (emphasizing the desirability that there be an end to litigation).

In the case *sub judice,* the motor accident giving rise to appellant's injuries and damages occurred in 1998. Appellant's suit arising from that event was dismissed in 2003. Nearly ten years have elapsed and the need for finality is significant here.

### Diligence

One seeking the aid of the court in setting aside an enrolled judgment must, in addition to showing fraud, mistake, irregularity, or clerical error, show " 'that the person seeking the revision acts with ordinary diligence and in good faith upon a meritorious cause of action or defense.' " *J.T. Masonry Co., Inc. v. Oxford Const. Services, Inc.,* 314 Md. 498, 506, 551 A.2d 869 (1989) (citing *Platt, supra,* 302 Md. at 13, 485 A.2d 250). The requirement of ordinary diligence is well-settled. *See Id.* (citations omitted). Ordinary diligence includes moving to vacate a judgment "as soon as" a party learns of the judgment and investigates the facts. *Fleisher, supra,* 60 Md.App. at 573, 483 A.2d 1312.

Appellant's initial action, after learning of Graham's misrepresentations, was to file a complaint against him, seven months later. Only after that case had been concluded in 2006, and Bland learned of Graham's lack of insurance and insolvency, did she initiate the present action to vacate the original judgment. By that time, nearly three years had passed since her original claim had been dismissed, and nearly

14 months had passed since she learned of that dismissal. The motions judge observed that appellant "must act expeditiously to vacate a judgment after 30 days and, in the case [appellant] did not exercise due diligence in doing so." We agree with that assessment.

We do not hesitate to note that, despite Graham's negligence, Bland had the duty "to keep herself informed as to what was occurring in the case." *Wooddy, supra,* 256 Md. at 454, 261 A.2d 486, (citing *Baltimore Luggage Co. v. Ligon, III,* 208 Md. 406, 118 A.2d 665 (1955)). Graham's failure to respond to Bland's repeated inquiries ought to have .been a signal to her that something was amiss with her case. As we held in *Das, supra,* "[o]ur rules on a litigant's duties in the midst of litigation are clear. First, a litigant has a duty to keep himself informed as to the progress of a pending case." 133 Md.App. at 19, 754 A.2d 441 (citing *Penn Cent. Co. v. Buffalo Spring & Equip. Co.,* 260 Md. 576, 581, 273 A.2d 97 (1971); *Tasea Inv. Corp. v. Dale,* 222 Md. 474, 478, 160 A.2d 920 (1960)). As the Supreme Court succinctly noted in *Link v. Wabash R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962):

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and considered to have notice of all facts, notice of which can be charged upon the attorney.

Bland retained Graham in July 1998. It was not until December 2004, more than six years later, that she finally grew sufficiently suspicious of Graham's inaction and failure to respond to her repeated calls, over several years time, to contact the Circuit Court directly to inquire into the status of her case. We agree with the trial court that Bland's own actions do not rise to the level of ordinary diligence, nor did

she satisfy her duty to keep herself informed of the status of her case.

In sum, we adhere to the definition of extrinsic fraud announced in *United States v. Throckmorton, supra,* as it has been consistently reiterated by this Court and the Court of Appeals. The conduct of Bland's previous counsel does not fit within that definition.

**JUDGMENT OF THE CIRCUIT**

**COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED;**

**COSTS ASSESSED TO APPELLANT.**