485 A.2d 250

**James Beach PLATT, III**

v.

**Grace Dryfoos PLATT.**

**No. 132, Sept. Term, 1983.**

Court of Appeals of Maryland.

Dec. 24, 1984.

F. Ford Loker, Baltimore (Robert G. Carr, Towson, and Patrick J.B. Donnelly, Baltimore, on brief), for appellant.

Thomas C. Ries, Baltimore (Ann M. Turnbull and Frank, Bernstein, Conaway & Goldman, Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON,* RODOWSKY and COUCH, JJ.

MURPHY, Chief Judge.

This case calls into question the legality of revising a five-year-old enrolled circuit court decree.[1]

---

\* Davidson, J., participated in the hearing of the case and in the conference in regard to its decision, but died prior to the adoption of the opinion by the Court.

1. We adopted numerous changes in the Maryland Rules of Procedure, effective July 1, 1984. Inasmuch as the judgment from which this appeal was taken was entered before the effective date of the new rules, we decide the case under the former rules. Former Rule 671 a provided: "A final decree, and order in the nature of a final decree, shall be considered as enrolled from and after the expiration of thirty days from the date of the same." Reference in this opinion to an "enrolled" decree or judgment is in the context of the former rules. We note that under the new rules, which no longer distinguish between law and equity actions, there is no concept of "enrollment" of a decree or judgment. The significant date is the time of entry.

Present Rule 2–535 covers the revisory power and control of a circuit court over a decree and a judgment. There is no substantive change from the former rules on the subject.

## I

On October 8, 1980, James Beach Platt, III (the husband) filed a petition in the Circuit Court for Baltimore County to amend, *nunc pro tunc,* a decree issued on December 16, 1975, divorcing him *a vinculo matrimonii* from Grace Dryfoos Platt (the wife). The wife demurred and the court sustained the demurrer without leave to amend. The husband appealed. The Court of Special Appeals affirmed the judgment in an unreported opinion and we granted certiorari.

## II

The facts are undisputed. Differences developed between the husband and wife which caused them to live separate and apart with the intention of terminating the marriage. They defined and settled their marital rights, obligations and interests in a Separation Agreement, executed September 22, 1975. The Agreement called upon the husband to support the wife and their two children. It was the intention of the parties, readily apparent on the face of the Agreement, that the income tax burden of the support payments be borne by the wife, the lesser income spouse. This intention was an important factor in arriving at the amount of the support payments. The parties attempted to assure the fulfillment of this intention by providing in paragraph 4 of the Agreement that the husband would pay the wife $750 per month. The lump sum payment was for the support of both the wife and the children; there was no designation of a fixed sum or percentage of the payment expressly for child support. This was in accord with the teachings of *Commissioner v. Lester,* 366 U.S. 299, 81 S.Ct. 1343, 6 L.Ed.2d 306 (1961) where the Court held: "The agreement must expressly specify or 'fix' a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income." 366 U.S. at 303, 81 S.Ct. at 1346. Thus, the total amount of a lump sum payment, designated as for the support of both a wife and children, would be deductible from the taxable income

of the husband and included in the taxable income of the wife. Conversely, if the written instrument fixed a sum certain for the support of the children, that amount would not be included in the taxable income of the wife, and thus would not be deductible by the husband. In that event, the tax burden of the sum paid expressly for the support of the children would be on the husband and not on the wife.

The support orders in the divorce decree were not in accord with the support provisions of the Agreement. The report to the court of the Examiner-Master who heard the divorce proceedings recommended that the husband pay the wife $350 per month for the support of each child, for a total of $700 per month, and $50 a month for the support of the wife. The support orders were so written in the divorce decree, even though the decree stated that the payments were "as specified in paragraph 4" of the Agreement, commanded the parties "to fully perform and carry out all of the covenants and conditions set forth in their agreement," approved "the pertinent terms" of the Agreement and incorporated them into the Agreement "as if fully set forth" in the decree. The record before us does not disclose what reason, if any, the Examiner-Master had for departing from the support provisions of the Agreement. Nor does it indicate why the court accepted the recommendations. In any event, in the latter part of 1979 the Internal Revenue Service (IRS) notified the husband that the full amount of the support payments did not qualify as a deduction from his gross taxable income. It took the position that the decree superceded the Agreement. Rather than the blanket sum of $750 a month called for in the Agreement, only the $50 a month fixed by the decree as support for the wife was deductible by the husband and chargeable to the wife. The IRS indicated, however, that were the decree amended to conform with the Agreement, it would change its position with respect to taxability of the family support payment. Finally convinced that the IRS would not change its position unless the decree was amended, the husband, on October 8, 1980, filed his petition to amend the decree which had been

long past enrolled. On August 30, 1982, the court sustained the wife's demurrer to the petition without leave to amend.

### III

■ The law governing the power and control of a circuit court over an enrolled decree is firmly established. In the context of this case in which "newly discovered evidence" is not a concern, it is spelled out by rule—former Maryland Rules 625 a and 681; by statute—Maryland Code (1974, 1984 Repl.Vol.) § 6–408 of the Courts and Judicial Proceedings Article; and by judicial decision—e.g. *Maryland Lumber v. Savoy Constr. Co.*, 286 Md. 98, 405 A.2d 741 (1979); *Hughes v. Beltway Homes, Inc.*, 276 Md. 382, 347 A.2d 837 (1975). Read together, the rules, the statute and our decisions boil down to a dictate that for a period of thirty days from the entry of a law or equity judgment a circuit court shall have "unrestricted discretion" to revise it. *Maryland Lumber*, 286 Md. at 102, 405 A.2d 741. Thereafter, a circuit court has revisory power and control over a judgment only in case of fraud, mistake, irregularity or clerical error, provided that the person seeking the revision acts with ordinary diligence and in good faith upon a meritorious cause of action or defense. This dictate "embraces all the power the courts of this State have to revise and control enrolled judgments and decrees." *Eliason v. Comm'r of Personnel*, 230 Md. 56, 59, 185 A.2d 390 (1962). *See also Meyer v. Gyro Transp. Systems*, 263 Md. 518, 527, 283 A.2d 608 (1971). We have narrowly defined and strictly applied the terms fraud, mistake, irregularity, and clerical error, and have set out what constitutes ordinary diligence. *See Hughes, supra,* 276 Md. at 386–389, 347 A.2d 837, and cases therein cited; *Weitz v. MacKenzie*, 273 Md. 628, 631, 331 A.2d 291 (1975).

### IV

■ The circuit court in sustaining the demurrer, and the intermediate appellate court in affirming that judgment,

concluded that the husband had not shown that the challenged decree was the result of fraud, mistake, irregularity or clerical error. The husband does not take direct issue with that determination. Instead, he advances two contentions. First, he argues that it is fundamentally unfair not to have the intention of the parties realized as to the tax burden of the support payments. He claims that there is an "ambiguity present in the [decree]," namely the fixing therein of an express amount for the wife's support and an express amount for the children's support, accompanied by the inaccurate assertion that the payments were as specified in paragraph 4 of the Agreement. The husband urges that the ambiguity be resolved to accomplish the intent of the parties. In the face of the plain language of the decree fixing the amount of payments to the wife and the amount to the children, this could only be done effectively (for IRS purposes) by revising the decree to call for a lump sum payment. However, the revisory dictate does not provide for the amendment of an enrolled judgment on the ground of "fundamental unfairness." To do what the husband asks would require addition of a fifth ground—"fundamental unfairness"—to the revisory dictate. This may be done by statute or rule but not by judicial decision. The husband's first contention does not serve to give him the relief he desires.

The husband's second contention urges recognition of a revisory power in the circuit court beyond that bestowed by the statute and the rules. He purports to find this power in *Bebermeyer v. Bebermeyer*, 241 Md. 72, 215 A.2d 463 (1965) but we do not agree. The agreement in *Bebermeyer* called for the support of the wife and two minor children. The decree omitted the word "wife." Eleven years after the enrollment of the decree the trial court concluded that the omission was a "typographical error." *Id.* at 76, 215 A.2d 463. We think that such a typographical error was a clerical mistake or an error "arising from [an] accidental slip or omission" within the scope of Rule 681. Thus, the trial court had the power to revise the decree to account for

the wife. We further held, however, that the trial court did not have the power to designate the payments for the wife's support as "alimony" when the agreement did not so specify. *Id.* at 78, 215 A.2d 463. In other words, the trial court had the power to amend what was clearly a clerical error, and this Court's primary concern was not with the existence of the power, but with the manner in which that power was exercised. We do not take *Bebermeyer* as expanding a court's authority to revise an enrolled judgment. We emphasize that "all the power the courts of this State have to revise and control enrolled judgments and decrees" is embraced by the statute and rules covering the matter. *Eliason, supra,* 230 Md. at 59, 185 A.2d 390. Our decisions have preserved the integrity of the revisory dictate as set out in the statute and our rules. We have not expanded the authority of the courts to revise enrolled judgments and decrees beyond them. We have but tempered the revisory power and control so bestowed by defining strictly the grounds for revision and by requiring the moving party to act with ordinary diligence in good faith. As we have noted, if the power to revise and control enrolled judgments is to be expanded it is properly to be done by enactment of additional legislation or by changes in the Maryland Rules.

## V

The circuit court, as a further ground for sustaining the demurrer, held that the husband did not act with ordinary diligence in seeking the revision of the decree.[2] Even if the circuit court had revisory power over the enrolled decree in this case, a precondition to its exercise in any event is that the moving party act with ordinary diligence. As to this point, the husband merely asserts that "the application of a theory of Laches has no merit, as [he] acted to correct the Divorce Decree as soon as [what he calls] the mistake

---

**2.** The Court of Special Appeals, in the light of its holding that there was no showing that the case was within the ambit of the revisory dictate, did not address the question of ordinary diligence.

[which he characterizes as] (here the inadvertent interpretation of the agreement by the Examiner-Master) was discovered." We do not believe that this was sufficient to show that he acted with the ordinary diligence required. The husband suggests that "[t]he agreement was carefully designed to set up an arrangement commonly referred to as a 'Lester Agreement' of family support." He stresses that "[t]he use of the Lester tax advantages was carefully negotiated between counsel for the parties, and is fully set forth in Paragraphs 4 and 5 of the Separation Agreement." He states that at the time the Agreement was executed he was thoroughly familiar with *Commissioner v. Lester, supra,* its teachings, and the impact of its holdings on the taxability of payments for the support of a wife and children. Of course, he received a copy of the decree when it was entered. It was readily apparent on the face of the decree that the support orders were not in accord with *Lester's* precepts. Inevitably, under the wording of the decree, upon any audit of the husband's income tax returns, a deduction by him, which included the payments for the support of the children, would be disallowed and such payments would be held not to be taxable as income to the wife but rather to the husband. If the husband did not recognize this when the decree was issued it was, nevertheless, clearly there for him to see. If he gambled that his returns would not be audited or that the IRS would overlook the matter, he lost. It was then too late for him to call upon the revisory power of the court. The fact that he moved promptly after an adverse ruling by the IRS was of no matter; the ruling was reasonably predictable when the decree was entered almost five years before. The husband allowed the decree to become enrolled without challenge. In the circumstances here, the husband, to protect himself, should have sought to have the decree revised before its enrollment, i.e., within thirty days of its entry. Of course, a trial court enjoys wide discretion to revise an unenrolled judgment. Former Rule 625 a; § 6–408 of the Courts Arti-

cle; *Maryland Lumber v. Savoy Constr. Co., supra,* 286 Md. at 102, 405 A.2d 741.

We observe that even if it could be shown that the wife was not prejudiced by the delay, this would not excuse the failure on the husband's part to act diligently. We have pointed out:

> The purpose of authorizing a trial court to exercise broad discretion to revise unenrolled judgments is to insure that technicality does not triumph over justice.... The purpose of limiting a trial court's discretion to revise an enrolled judgment is to promote finality of judgment and thus to insure that litigation comes to an end.... *Haskell v. Carey,* 294 Md. 550, 558, 451 A.2d 658 (1982) (citations omitted).

Thus, implicit in our cases is that prejudice *vel non* is not a controlling consideration with regard to ordinary diligence in seeking to revise an enrolled judgment.

We conclude that the husband did not act with the diligence required by our cases even if he acted in good faith with a meritorious cause of action. *Hughes, supra,* 276 Md. at 389, 347 A.2d 837, and cases therein cited.

JUDGMENT AFFIRMED, WITH COSTS.