975 A.2d 362

**Barbara T. DAVIS, Trustee**

v.

**ATTORNEY GENERAL of Maryland, et al.**

**No. 123, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

July 9, 2009.

114

Glenn C. Etelson of Rockville and Jayson Amster of Upper Marlboro, (on the brief), for appellant.

Austin C. Schlick (Douglas Gansler, Office of the Atty. Gen., on the brief), of Baltimore, for appellee.

Panel: DEBORAH S. EYLER, MEREDITH and JAMES A. KENNEY, III (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, J.

Katherine Anne Porter, the famous 20th Century American writer, died testate in Maryland on September 18, 1980. Her will created a charitable trust, designated the "Literary Trust" (or "Trust"), which is the subject of this appeal.

From July 18, 1983, until June 20, 2007, the Circuit Court for Montgomery County assumed supervisory jurisdiction over the Trust. The supervision ended after the court, by order, accepted a "Notice of Trust Termination" filed by trustee Barbara T. Davis, the appellant. Several months later, the Attorney General of Maryland filed a petition in the circuit court to rescind the order terminating the Trust and to award damages against Davis for breach of trust. The Attorney General's petition was filed on behalf of the State and the University of Maryland College Park, the beneficiary of the Trust, and the Dean of the University of Maryland Libraries, the appellees.

After receiving evidence by way of documents and affidavits, and holding a hearing, the court issued on March 10, 2008, an order that, among other things, vacated the order terminating the Trust and reinstated the court's supervision

over the Trust. Davis noted this appeal. The appellees have moved to dismiss the appeal as not allowed by law.

For the reasons that follow, we hold that Davis's appeal of that part of the March 10, 2008 order vacating the Trust termination order is allowed by law; it is within this Court's authority to review the other interlocutory rulings Davis is challenging in this appeal; we shall uphold those rulings; and the circuit court did not err or abuse its discretion in vacating the Trust termination order and re-assuming supervisory jurisdiction over the Trust.

## FACTS AND PROCEEDINGS

Porter executed her last will ("Will") in 1972.[1] By Article VI, later amended by three codicils, she created the Literary Trust, granting "all of my literary works, my writings, my papers, my notes, my letters to and from others and all property rights attendant to such literary works, writings, papers, notes, and letters" to a named trustee. It was Porter's expressed intention to dispose of all her literary works and rights by way of the Literary Trust. Porter named as beneficiary of the Trust the University of Maryland College Park. During her life, Porter had given and sold literary works and tangible personal items to the University of Maryland, which established and maintained the "Katherine Anne Porter Collection."

Further by Article VI, Porter gave her executor, E. Barrett Prettyman, Jr. (a lawyer and friend) "the power to designate one or more successor trustees to serve at any time and from time to time, concurrently or consecutively" should the named trustee of the Trust fail to qualify or complete his or her duties, or should it otherwise become necessary. The Will did not identify a successor to Prettyman, however.

The original trustee of the Literary Trust died on July 18, 1993. Prettyman designated Davis, a close friend of Porter's,

---

1. Porter was not married when she died and did not have any children. She was survived by a niece and a nephew.

as the successor trustee. The court ratified that appointment by order of November 29, 1993.

Twelve years went by. On December 14, 2005, the court approved appointments, by Prettyman, of two sequential literary trustees, to serve in the event that Davis could not continue to do so. These appointments were made by Prettyman upon Davis's request.

Beginning in the spring of 2006, and continuing for about a year, Prettyman, Davis, and Charles B. Lowry, then-Dean of the University of Maryland Libraries, exchanged a series of letters about the future of the Trust. Lowry proposed to Prettyman that the Office of Dean of the University of Maryland Libraries be appointed as permanent successor trustee of the Trust. Davis disagreed with the proposal, and sought to persuade Prettyman otherwise. For purposes of this appeal, it is not necessary to explore the reasons underlying the disagreement as to the future of the Literary Trust. It is enough to say that Lowry and Davis felt strongly about their divergent positions and that Prettyman, having the sole power to appoint a trustee, was in the role of decisionmaker. On May 10, 2007, Prettyman wrote to Davis, saying he was drawing near to making a decision and giving Davis an opportunity to reply to Lowry's latest correspondence before he did so.

On May 23, 2007, Davis (through her husband, an attorney) incorporated the "Katherine Anne Porter Foundation" ("Foundation"), which was organized as a charitable foundation under the federal tax code. Davis wrote her reply letter to Prettyman that same day, stating that, due to her concerns about the eventual lapse in authority to appoint a successor trustee that would happen upon Prettyman's demise, and to address Lowry's issues, she was in the process of forming the Foundation as the legal entity that "will be solely and perpetually dedicated to preserving Katherine Anne's intellectual property rights and legacy." Davis commented that in her view, as trustee, the Foundation would be "better suited to use the Trust property to carry out the wide variety of Katherine Anne's

intentions as outlined in her Will" than would be the University of Maryland, which, in Davis's opinion, "ha[d] failed to maintain educational and literary programs in keeping with the advantageous use of the assets of the Trust."

Prettyman responded to Davis by letter of June 4, 2007, expressing "shock[ ]" at her plan to terminate, unilaterally, the Literary Trust, and informing her, among other things, that as of that date he had appointed Lowry and Beverly Lowry (no relation) "as co-Literary Trustees to serve with you." (It appears, however, that the court was not asked to ratify, and did not ratify, the two new co-trustees at that or any other relevant time.)

On June 8, 2007, Davis transferred all of the Trust's assets to the Foundation. She did not inform Prettyman or Lowry of that fact. Exactly a week later, she filed in the circuit court a "Notice of Trust Termination." By order docketed on June 20, 2007 ("June 20 Order"), the court terminated the Trust subject to Davis's filing a final accounting. The final accounting then was filed and approved by order of July 17, 2007.

Around five months later, on December 27, 2007, the appellees filed an unverified "Petition for Re–Assumption of Jurisdiction and Complaint for Breach of Trust" ("Petition"). They alleged that none of them had been given the notice required by law of Davis's "Notice of Trust Termination," or of the entry of the June 20 Order. They asked among other things that the June 20 Order be rescinded and that the court re-assume jurisdiction over the Trust.

On January 3, 2008, the court issued an order directing Davis to show cause why the relief sought by the appellees should not be granted. The court scheduled a show cause hearing for March 3, 2008.

Davis filed a motion to dismiss because the Petition was not verified. She enumerated other grounds for her motion as well, including that, for the appellees to obtain the relief they were seeking, the court would have to vacate its June 20 Order, but the facts alleged in the Petition were not sufficient to show fraud, mistake, or irregularity under Rule 2–535(b).

Davis did not file a substantive response to the allegations in the Petition, including the allegations of lack of notice. Approximately one week later, she filed a motion to strike the show cause order and to postpone the show cause hearing.

On February 26, 2008, the Attorney General's Office filed a "Verified Petition for Re–Assumption of Jurisdiction and Complaint for Breach of Trust" ("Verified Petition"), signed by Lowry. Except for the verification, the Verified Petition was exactly the same as the originally filed Petition. Three days later, the Attorney General's Office supplemented its Verified Petition with affidavits and documents supporting them, which we shall discuss in greater detail below.

The show cause hearing went forward as scheduled on March 3, 2008. After counsel made their arguments, the court found "that there was such procedural irregularities here that the Court, sitting in equity and as the supervising court exercising its jurisdiction [over the Trust] since 1983, not only is permitted to reopen this case but has an obligation to do that." The court characterized the "Notice of Trust Termination" as "woefully deficient" and found, "[t]here has been a procedural irregularity. The rules were not complied with and they were not even minimally complied with." The court rejected Davis's counsel's argument that, even if there were a procedural irregularity in filing the "Notice of Trust Termination," it did not matter, because as trustee Davis had such broad powers to transfer the assets of the Trust that it would have made no difference to the outcome of the case had the appellees received notice.

The court determined that the "Notice of Trust Termination" procedure had been "highly improper" so as to "rise[ ] to the level [of] clear and convincing evidence that there was an irregularity here." On that ground the court decided to vacate the June 20 Order. On March 10, 2008, the court entered an order doing so (and vacating the July 17, 2007 follow-up order as well); re-assuming jurisdiction over the Trust; and denying Davis's motions to dismiss and to strike

show cause order ("the March 10 Order"). That order further directed that

> [Davis], as Literary Trustee, shall file with the Trust Clerk of this Court, with service on Assistant Attorney General Gary W. Kuc, a written notice of intent with proposed order before any asset held by the Literary Trust immediately prior to the transfer described in the Notice of Termination . . ., or representing income from such transferred assets, is disbursed or made the subject of a contract. The Literary Trustee shall ensure that such assets and income are not disbursed or made the subject of a contract absent prior approval by order of the Court, unless otherwise agreed between counsel as to ordinary expenses.

Davis filed her notice of appeal within 30 days of the entry of the March 10 Order. She poses three questions for review, which we have rephrased slightly:

I. Did the circuit court abuse its discretion, or fail to exercise discretion, by vacating the June 20 Order pursuant to Rule 2–535(b)?

II. Did the circuit court abuse its discretion by denying her motion to strike show cause order and continue hearing?

III. Did the trial court abuse its discretion by enjoining her from using the Foundation's assets without court order or consent?

## DISCUSSION

### Motion to Dismiss

■ Ordinarily, an order vacating an enrolled judgment is treated as a final judgment, and therefore is immediately appealable. *Ventresca v. Weaver Bros., Inc.,* 266 Md. 398, 403, 292 A.2d 656 (1972) (quoting *Mutual Benefit Soc'y of Balt., Inc. v. Haywood,* 257 Md. 538, 540, 263 A.2d 868 (1970)); *see also Kraft v. Sussex Constr. Corp.,* 35 Md.App. 309, 311 (1977). Citing *Gay Investment Co. v. Angster,* 231 Md. 318, 190 A.2d 95 (1963), the appellees argue that an exception to this general

rule applies here. According to the appellees, because Davis did not serve them with or give them notice of the "Notice of Trust Termination," the June 20 Order never became a final judgment, and thus is not appealable. Davis counters that the appellees' reliance upon *Gay* is misplaced, and that lack of notice does not affect an order's finality or enrollment.

We agree with Davis that the *Gay* case is not controlling in these circumstances. In *Gay*, a confessed judgment note was entered against the defendant. Pursuant to then Maryland Rule 645, a summons was issued, but was returned without being served. Almost three years later, the defendant filed a motion to strike, which was granted. The plaintiff noted an appeal. The defendant moved to dismiss the appeal, arguing that the order was not a final judgment and therefore was not appealable. In deciding whether to dismiss the appeal, the Court of Appeals explained that it was necessary to determine whether the confessed judgment was a final and enrolled judgment, or if it was not final because there was not service of process upon the resident defendant, pursuant to Rule 645. The Court found that the Rule had not been complied with, thus rendering the confessed judgment not final. The Court therefore granted the defendant's motion to dismiss on that basis.

Unlike in *Gay*, where the issue was lack of service of process, here the issue was lack of notice. This was an ongoing case, in which the court had obtained jurisdiction decades ago. All that was required procedurally for the Trust termination issue to be properly raised and before the court was for Davis to "serve all interested persons and all others exercising control over any of the fiduciary estate by mailing to them, by ordinary mail, a copy of the petition and a show cause order." Md. Rule 10–505(b) (2007).[2] Because service of process was not required, and only notice was required, *Gay* is

---

2. The State has also cited to Rule 10–710(d)(2) and (g) to state what requirements Davis should have met when filing the Notice of Trust Termination. Rule 10–710(g) lists the same notice requirements as those in Rule 10–505(b), so it is inconsequential which rule is cited.

inapplicable. While there was not proper notice pursuant to Rule 10–505(b), the court addressed this problem by vacating the June 20 Order. Thus, the lack of notice issue has been addressed, and the March 10 Order is properly treated as appealable.

As noted above, in this appeal, Davis challenges more than the circuit court's decision to vacate the June 20 Order. She also challenges the court's denial of her motion to strike show cause order and for continuance, and the court's directive, in its March 10 Order, that she obtain court approval before transferring or encumbering any Trust assets. These are interlocutory rulings that are not themselves subject to appeal. And, if the court's ruling vacating the June 20 Order is upheld, the case will proceed in circuit court, and thus shall continue.

The *denial* of a motion to vacate an enrolled judgment is a final order, subject to appeal, as there is nothing left to be done in the circuit court. *See First Federated Commodity Trust Corp. v. Comm'r of Sec.*, 272 Md. 329, 333, 322 A.2d 539 (1974); *Kraft, supra*, 35 Md.App. at 311, 370 A.2d 570. The grant of a motion to vacate an enrolled judgment is not a final order, as it does not resolve the case; indeed, it reopens it. As we have explained, however, such an order is *treated as final* for purposes of appeal. The rationale for that well-established principle is that the person who benefitted from the now-vacated enrolled judgment has lost an important right, and therefore an appeal of the ruling is necessary to vindicate that right, if it was wrongfully lost. *See Ventresca, supra*, 266 Md. at 403, 292 A.2d 656.

Because the March 10 Order is treated as a final appealable judgment, this Court has jurisdiction over this appeal. There is no issue of a jurisdictional defect. Ordinarily, in an appeal from a final judgment, all prior interlocutory orders are subject to review. Rule 8–131(d). The Court of Appeals has made plain, however, that review of prior interlocutory orders "only applies to appeals from final judgments in the usual sense" and does not usually apply to statutorily

sanctioned appeals from interlocutory orders or appeals from orders that are not final, but are treated as if they are. *Snowden v. Balt. Gas & Elec. Co.*, 300 Md. 555, 559–60 n. 2, 479 A.2d 1329 (1984). However, to the extent such previous rulings directly control and are inextricably bound to the order that is treated as final for purposes of appeal, those rulings may be challenged. *See id.* at 560 n. 2, 479 A.2d 1329 (quoting *United States v. Fort Sill Apache Tribe, State of Okla.*, 507 F.2d 861, 863–64 (Ct.Cls.1974). *See also Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121, 1122, 1124 (7th Cir. 1983)).

In this case, the rulings Davis challenges all are included in the March 10 Order and all are intertwined with the court's decision to vacate the June 20 Order. Accordingly, those rulings properly may be challenged in this appeal.

## I.

A circuit court's power to revise its judgments is governed by Md.Code (1973, 2006 Repl.Vol.), section 6–408 of the Courts and Judicial Proceedings Article ("CJ"), and Rule 2–535. CJ section 6–408 provides:

> For a period of 30 days after the entry of a judgment, or thereafter pursuant to [a] motion filed within that period, the court has revisory power and control over the judgment. After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule.

Rule 2–535(a) likewise provides that, "[o]n motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment." Under Rule 2–535(b), "[o]n motion of a[ ] party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity."

The existence of fraud, mistake, or irregularity must be shown by "clear and convincing evidence." *Das v. Das*, 133

Md.App. 1, 18, 754 A.2d 441 (2000). *See also Weinreich v. Walker*, 236 Md. 290, 296, 203 A.2d 854 (1964); *Bowen v. Rohnacher*, 15 Md.App. 280, 284, 290 A.2d 560 (1972). Once fraud, mistake, or irregularity has been shown, the court may vacate the judgment upon consideration of equitable factors, including whether the moving party has shown that he has acted in good faith and with ordinary diligence, and that he has a meritorious cause of action or defense, as the case may be. *See Thacker v. Hale*, 146 Md.App. 203, 217, 806 A.2d 751 (2002) ("Moreover, the party moving to set aside the enrolled judgment must establish that he or she 'act[ed] with ordinary diligence and in good faith upon a meritorious cause of action or defense.' " (quoting *Platt v. Platt*, 302 Md. 9, 13, 485 A.2d 250 (1984))); *see also J.T. Masonry Co. v. Oxford Constr. Servs., Inc.*, 314 Md. 498, 506, 551 A.2d 869 (1989) ("The power of the circuit court to revise a final judgment which has been entered for more than thirty days requires, in addition to fraud, mistake, irregularity or clerical error, 'that the person seeking the revision acts with ordinary diligence and in good faith upon a meritorious course of action or defense.' " (quoting *Platt, supra,* 302 Md. at 13, 485 A.2d 250)); *Md. Lumber Co. v. Savoy Constr. Co.*, 286 Md. 98, 102, 405 A.2d 741 (1979); *Williams v. Snyder*, 221 Md. 262, 270, 155 A.2d 904 (1959).

We review a circuit court's determination of whether there was fraud, mistake, or irregularity for clear error and legal correctness. *See In re: Adoption/Guardianship No. 93321055/CAD*, 344 Md. 458, 475–76 n. 5, 687 A.2d 681 (1997) (noting that, if a court denies a motion to vacate judgment because the "event or conduct underlying the motion did not constitute cognizable fraud, mistake, or irregularity," the issue on appeal is "a purely legal one"), *overruled in part on other grounds, In re Adoption/Guardianship Nos. 11387 & 11388*, 354 Md. 574, 731 A.2d 972 (1999). We review the court's exercise of discretion to vacate the judgment, upon consideration of the equitable factors, for abuse. *See Bland v. Hammond*, 177 Md.App. 340, 347, 935 A.2d 457 (2007); *Wells v. Wells*, 168 Md.App. 382, 394, 896 A.2d 1082 (2006).

 An "irregularity" is " 'the doing or not doing of that, in the conduct of a suit at law, which, conformable to the practice of the court, ought or ought not to be done.' " *Autobahn Motors, Inc. v. Mayor and City Council,* 321 Md. 558, 562, 583 A.2d 731 (1991) (quoting *Weitz v. MacKenzie,* 273 Md. 628, 631, 331 A.2d 291 (1975)); *see also Hughes v. Beltway Homes, Inc.,* 276 Md. 382, 388, 347 A.2d 837 (1975) (quoting *Weitz, supra,* 273 Md. at 631, 331 A.2d 291); *Minger v. State,* 157 Md.App. 157, 169, 849 A.2d 1058 (2004) (quoting *Gantt v. State,* 99 Md.App. 100, 104, 635 A.2d 97 (1994)). Furthermore, an "irregularity" in the contemplation of Rule 2–535(b) is "not an error, which in legal parlance, generally connotes a departure from truth or accuracy of which a [party] had notice and could have challenged," but a nonconformity of "process or procedure." *See Weitz, supra,* 273 Md. at 631, 331 A.2d 291; *see also Gruss v. Gruss,* 123 Md.App. 311, 320, 718 A.2d 622 (1998) (quoting *Weitz, supra,* 273 Md. at 631, 331 A.2d 291; *Early v. Early,* 338 Md. 639, 652, 659 A.2d 1334 (1995)).

Davis contends the circuit court erred and abused its discretion in vacating the June 20 Order. Her reasons are as follows: 1) the court should not have treated the appellees' Petition under Rule 10–501(c) as a motion to vacate under Rule 2–535(b); 2) although the court decided there was an irregularity, it erred by not further deciding whether the appellees were diligent in filing their Petition and whether the Petition appeared to have merit; and 3) the court improperly shifted the burden of proof to her to prove that the June 20 Order *should not* be vacated, when the burden of proof should have been on the appellees to show that the June 20 Order *should* be vacated. These arguments lack merit.

Under Md.Code (1974, 2001 Repl.Vol.), section 14–101 of the Estates and Trusts Article ("ET),[a] court having equity jurisdiction has general superintending power with respect to trusts." ET sections 14–301 *et seq.* govern charitable trusts. There is no dispute that the Literary Trust is a charitable trust created under the Will. ET section 14–301(a) grants "[c]ourts of equity ... full jurisdiction to enforce trusts for

charitable purposes upon suit of the State by the Attorney General or suit of any person having an interest in enforcement of the trust." It is under the latter statute, and Rules 10–501 *et seq.*, that the appellees filed their Verified Petition seeking to have the circuit court re-assume supervisory jurisdiction over the Trust.

When a court has jurisdiction over a fiduciary estate such as the Trust in this case, that jurisdiction may be terminated pursuant to Rule 10–505, which provides:

(a) **Who may file.** Upon petition filed by any interested person, a court which has assumed jurisdiction over the administration of a fiduciary estate may relinquish jurisdiction.

(b) **Notice.** Unless the court orders otherwise, the petitioner shall serve all interested persons and all others exercising control over any of the fiduciary estate by mailing to them, by ordinary mail, a copy of the petition and a show cause order issued pursuant to Rule 10–104.

(c) **Proceedings.** (1) No response to show cause order. If no response to the show cause order is filed and the court is satisfied that the petitioner has complied with the provisions of section (b) of this Rule, the court may rule on the petition summarily.

(2) Response to show cause order. If a response to the show cause order objects to the relief requested, the court shall hold a hearing and shall give notice of the time and place of the hearing to all persons who have responded.

In the case at bar, the circuit court had had supervisory jurisdiction over the Trust since 1983. The "Notice of Trust Termination" filed by Davis on June 15, 2007, made no reference to Prettyman, who, as noted, is the executor of the Will that created the Trust and the person having authority to appoint trustees, or to the University of Maryland College Park, the Trust beneficiary. The "Notice of Trust Termination" was not mailed to or in any way served upon the University of Maryland College Park, Lowry, or Prettyman.

The "Notice of Trust Termination" stated that the Trust had been treated as a charitable trust in this case (which is captioned below as *In re the Literary Trust Under the Will of Katherine Anne Porter*) and "therefore the Attorney General of the State of Maryland has been served with a copy of this Notice despite the Maker's grant of authority to act without other approval." The Certificate of Service stated that a copy of the "Notice of Trust Termination" was mailed, postage prepaid, certified mail return receipt requested to Maryland Attorney General Douglas F. Gansler, at the Baltimore City Office of the Attorney General. Davis did not seek or obtain a show cause order pursuant to Rule 10–104, as required by Rule 10–505(b), and no show cause order was issued.[3]

At the March 3, 2008 hearing in which the court decided to re-assume supervision of the Trust, the court had before it the "Notice of Trust Termination," which on its face showed that there was no notice to the University of Maryland College Park, Lowry, or Prettyman, and that no show cause order was sought or issued. It also had affidavit evidence and support-ing documents from David K. Hayes, a lawyer in the Office of the Attorney General who had represented the University of Maryland College Park when the appointment of future subse-quent trustees for the Trust was ratified in 2005. The lawyer for Davis involved in that request was the same lawyer as is her counsel now, and would have known of Hayes's prior involvement in the matter. Nevertheless, Hayes was not included in the certificate of service for the "Notice of Trust Termination." Had he been, he would have received it in the mail. In addition, Hayes attested that, because his name was

---

**3.** Rule 10–104, entitled "Show cause orders," states:

[With exceptions not applicable here], upon the filing of a petition, the court shall issue a show cause order directing a person to show cause in writing on or before a specified date why the court should not take the action described in the order. Unless the court orders other-wise, the specified date shall be 20 days after the date prescribed for service in the order. The order shall also specify who is to be served and the method of service and, if a hearing is scheduled when the order is issued, the date, time, and place of the hearing. A copy of any related petition or document shall be served with a copy of the order.

associated with the Trust due to his prior activity on the case, any correspondence sent to the Attorney General's Office would have been forwarded to him. He received no such correspondence, however.

The court also had evidence before it that no certified letter meeting the description of the "Notice of Trust Termination" ever was received by the Office of the Attorney General at any relevant time. Specifically, the affidavit of Donna D. Brooks, of the Office of the Attorney General, explained the efforts that later were made to determine whether any such certified letter ever was received. (Davis points out that the rule did not require service by certified mail; the point of the evidence about the non-receipt of any certified letter, however, was that what was represented to have been mailed in the "Notice of Trust Termination" certificate of service—a certified letter, return receipt requested—was not received by the Attorney General's Office and, by inference, was never mailed to it.)

There was overwhelming evidence before the court at the March 3, 2008 hearing of "irregularity" in Davis's Trust termination request and the resulting June 20 Order, and that the irregularities, including lack of notice or any form of service and failure to seek and obtain a show cause order, resulted in the Trust's being terminated without any knowledge on the part of the University of Maryland College Park, Lowry, Prettyman, or the State of Maryland. Indeed, even though counsel for Davis continued, during the hearing, to maintain that the Attorney General's Office properly had been served, he acknowledged that he should have served the University of Maryland and Prettyman, and that he did not do so.

Davis complains, however, that it was improper for the court to apply Rule 2–535(b) to vacate the June 20 Order, because the appellees did not file a paper captioned "motion to vacate" and did not pursue vacation as a remedy in their Petition (or Verified Petition). It is ironic that Davis makes this argument on appeal, because the record shows that *she* first raised Rule 2–535(b) in the proceedings below. As noted

above, in her motion to dismiss, Davis asserted that the relief the appellees were seeking could not be granted unless the court first were to vacate its June 20 Order terminating the Trust. She did not argue that Rule 2–535(b) was inapplicable, but that it was not satisfied. In any event, we have no trouble concluding that the court properly considered the appellees' request in their Petition to "rescind" the June 20 Order as a motion to vacate under Rule 2–535(b).

A petition seeking to enforce a charitable trust, under ET section 14–301, is a civil suit in equity. Therefore, except when a more specific procedure is called for by specific rule, the Maryland general rules of civil procedure apply. Rule 1–101(b). Here, Rules 10–501 *et seq.*, governing fiduciary estates of this sort, do not set forth a procedure for an interested person to seek assistance of the court to undo an order that improperly terminated the court's supervisory jurisdiction over a trust. The substance of the appellees' Petition asked the court to enforce the Trust by, as the first step, rescinding its June 20 Order terminating jurisdiction over the Trust. If, as Davis herself argued below, the court could not decide the enforcement issues without first re-assuming jurisdiction over the Trust, and only could do that by vacating the June 20 Order, the only avenue available to the appellees to obtain the assistance of the court in rescinding the Trust termination order was Rule 2–535(b).

The court properly found that Davis's "Notice of Trust Termination" did not comply with the procedural requirements of Rule 10–505, in particular those affording notice to interested persons, and that the June 20 Order was entered as a consequence of that irregularity.

Davis's second argument is that, after finding the June 20 Order was the product of an irregularity, the court erred by not expressly deciding whether the appellees were diligent in moving to rescind, *i.e.*, to vacate, that order and whether the Verified Petition itself appeared to have merit. This argument has no merit. With respect to diligence, the evidence before the court was that it had supervised the Trust for 24

years when Davis filed her "Notice of Trust Termination"; Davis did not give the interested persons, including Prettyman, Lowry, and the University of Maryland, or the Attorney General's Office, notice of the termination request, nor did the court issue a show cause order; and the appellees' Petition seeking to rescind the June 20 Order terminating court supervision of the Trust was filed four and one-half months after the appellees learned that the court had entered the June 20 Order.

 To be sure, the law dictates that a court only will vacate an enrolled judgment when there was fraud, mistake, or irregularity and when the moving party has acted with ordinary diligence (and in good faith) and has a meritorious position. As a reviewing court, however, we may presume that a circuit court judge acted with knowledge of the controlling law. *See Attorney Grievance Comm'n v. Jeter,* 365 Md. 279, 288, 778 A.2d 390 (2001); *Ball v. State,* 347 Md. 156, 206, 699 A.2d 1170 (1997). As there is no requirement that the judge have stated, expressly, that the appellees, as the moving parties, acted with ordinary diligence, we may (and shall) assume that the judge knew that ordinary diligence was required, and granted revisory relief because ordinary diligence was exercised. We note, moreover, that there was nothing before the judge suggesting that the four-and-one-half-month passage of time had caused prejudice to Davis (or anyone else).

 Davis is wrong in her assertion that the circuit court judge exercised revisory power without considering whether the appellees' underlying position—that Davis acted improperly in transferring the Trust assets to the Foundation—had merit. This topic first was broached by Davis's counsel, in arguing that proper notice to the appellees would have made no difference because Davis's authority to unilaterally transfer Trust assets to a Foundation was so clear that it could not be disputed. The judge rejected that argument, stating:

I have read the [W]ill as well. And I do not make this as the statement as a finding in this case, in terms of what this

[W]ill says, because that may await another day and some further exploration, but it seems to me that there is a strong suggestion that Ms. Davis could not transfer these assets as she did . . . .

 \* \* \* \* \* \*

I do not accept and I will not find, as a fact in interpreting this [W]ill, that [Davis] had such plenary authority [as trustee] that notice did not matter.

The judge's observations on this point are tantamount to an express finding that the allegations in the Verified Petition reasonably could be found meritorious.

██ Finally, Davis argues that, by treating the Verified Petition as a motion to vacate and addressing it in a show cause hearing, the court improperly shifted the burden of proof. Specifically, the court placed the burden on her to prove that the June 20 Order *should not* be vacated, when the burden of proof should have been on the appellees to show that it *should* be vacated.

There is nothing in the record of the March 3, 2008 hearing to suggest that the court improperly assigned the burden of proof in treating one item of the relief sought in the Verified Petition as a Rule 2–535(b) motion to vacate the June 20 Order. Davis points to the procedure adopted at the hearing—with her counsel arguing first and counsel for the appellees arguing in response—as clearly showing that the court shifted the burden of proof. We disagree. The court commenced the hearing by observing that it was a motions hearing and identifying the various motions that were pending. The court then proceeded to first take up Davis's motion to dismiss; that is why the court had Davis's counsel argue first. Early in the course of that argument, Davis's lawyer pointed out that the June 20 Order terminating the court's supervision over the Trust was final and enrolled and therefore barred any of the claims asserted by the appellees. That assertion logically led the court to address, as a threshold issue, whether the termination order could and/or should be

vacated under Rule 2–535(b). The judge treated the vacation issue as a Rule 2–535(b) motion by the *appellees,* and there is nothing in the hearing transcript to suggest that she considered and decided the vacation issue by placing the burden of proof on Davis, who for that purpose was the non-moving party.

## II.

Davis next contends the circuit court abused its discretion by denying her motion to strike show cause order. She argues that, under Rule 10–501, when a petition to assume jurisdiction over a fiduciary estate is filed, the petitioner must give notice and a show cause order is issued; but here,

> the Trust had ceased to exist five months earlier, and thus there was no "fiduciary estate" over which the [c]ourt could assume jurisdiction ... the result of which was that Mrs. Davis was forced to appear in [c]ourt to defend the totality of her actions without the obligation on the part of [the] [a]ppellees to first prove their case against her.

The first ruling by the court at the March 3, 2008 hearing was to vacate the previous order terminating its jurisdiction over the Trust. This is not a case in which the court never had had jurisdiction over the Trust, and was being asked for the first time to assume jurisdiction over it. The court had supervised the Trust for 24 years, and then ceased supervising it for a few months. The threshold question for the circuit court was whether to vacate the order that had terminated its supervision over the Trust. Upon doing so, the court again had jurisdiction over the Trust, which still existed, regardless of whether the Trust assets had been transferred. Moreover, the court did not require Davis to "defend the totality of her actions" at the March 3, 2008 hearing. The only actions at issue during that hearing were those taken (or not taken) with respect to the filing of the "Notice of Trust Termination." The court made clear that the issue of Davis's authority, *vel*

*non,* to create the Foundation and transfer the Trust assets to it was not being addressed or decided at that time.

## III.

As recited above, the March 10 Order includes the following final directive:

> FURTHER ORDERED that [Davis], as Literary Trustee, shall file with the Trust Clerk of this Court, with service on Assistant Attorney General Gary W. Kuc, a written notice of intent with proposed order before any asset held by the Literary Trust immediately prior to the transfer described in the Notice of Trust Termination [*i.e.,* the transfer to the Foundation], or representing income from such transferred assets, is disbursed or made the subject of any contract. The Literary Trustee shall ensure that such assets and income are not disbursed or made the subject of a contract absent prior approval by order of the Court, unless otherwise agreed between counsel as to ordinary expenses.

Davis's last contention is that the circuit court abused its discretion by so directing. She argues that this direction amounted to injunctive relief, imposed without adherence to the procedures governing injunctions. We disagree.

For the reasons we have explained, the court properly vacated the order that had closed its supervision over the Trust, and re-assumed its supervisory jurisdiction over the Trust, first obtained in 1983, with Davis as trustee, pursuant to her appointment by order of November 29, 1993. The relationship of the court to Davis thus returned to that of an equity court supervising a trust and the trustee under the trust being supervised. *See* ET § 14–101 ("A court having equity jurisdiction has general superintending power with respect to trusts.").

It was undisputed that, during her tenure as trustee, Davis transferred the assets of the Trust to the Foundation. The primary issue raised in the Verified Petition, that ultimately would be decided by the court, was whether Davis had the

authority and a proper basis, under the Will, to transfer the Trust assets out of the Trust, to the Foundation. If not, the assets now in the Foundation would be ordered returned to the Trust. However, given that the assets formerly in the Trust already are in the hands of the Foundation, the Trust assets cannot be preserved, and therefore might not be available for return to the Trust, if they can be further transferred or encumbered. Accordingly, the purpose of the court's directive to Davis, as Trustee, was to maintain the *status quo* pending a determination whether the Trust assets properly were transferred, and thus to preserve the Trust estate, until that decision is made.

The general equity power of the court to supervise trusts necessarily includes the power to preserve trust assets when there is a contested issue as to whether they could be, or properly were, transferred. Here, because the Trust assets are now in the hands of the Foundation, which is controlled by Davis, the only means the court had to preserve them was to establish a procedure by which Davis, as trustee, must obtain prior approval to further transfer or encumber them. The court was not imposing an injunction in so directing; it was exercising its superintending powers over the Trust, and did not abuse its discretion in doing so.

**ORDER AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**